THEODORE SAMLAND, APPELLEE, V. FORD MOTOR COMPANY, APPELLANT.

FILED OCTOBER 7, 1932. No. 28510.

Gaines, McGilton, McLaughlin & Gaines, for appellant.

E. L. Murphy, contra.

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action for compensation, brought under the workmen's compensation act by Theodore Samland against the Ford Motor Company. The claim was rejected after a hearing before the compensation commissioner, but upon appeal to the district court the plaintiff was awarded compensation for 35 weeks at $15 per week, together with $75 medical expense. Motion for new trial being overruled, appeal was taken to this court.

There is little dispute about the facts, and, as they present a new question for determination in this court, they will be set out in some detail. While plaintiff, now appellee, was employed in the plant of the Ford Motor Company in Omaha, he suffered an injury to the index finger of his right hand upon September 4, 1928. The injury not yielding to the ordinary treatment of Dr. Hawes, the plant physician, but showing that an infection had resulted, he was sent to Dr. John H. Thomsen, who amputated the injured finger upon October 6, 1928. He made the usual recovery from the operation, and no swelling of the gland at the elbow or in the armpit occurred. On October 11 Dr. Thomsen gave him some staphylococcus vaccine, because he had developed a condition known as furuncles or boils, which had no connection whatever with the injury, but developed separately and cleared up quick-

ly; and when he left the hospital on October 21 Dr. Thomsen testifies he was entirely well except as to the loss of his finger. For this injury the appellee was paid by the Ford Motor Company 2 1/7 weeks' temporary total disability, at the rate of $15 a week, or a total of $32.20, by check dated October 9, 1928, and the company paid for his hospital and surgical service, $101.65, and he was then allowed and paid the amount due under the law of 35 weeks' disability at $15 per week for the loss of his right index finger, a total of $525. The appellee returned to work on November 19 and worked intermittently, and while he may have been given a little lighter work he drew his full pay during that time. He made no complaint about any trouble during that time. He stopped working voluntarily on January 21, 1929. They continued sending him checks during the remainder of the 35 weeks, and when they were ready to deliver the final payment check, which was so marked on the back, the cashier discovered that one of the previous checks given him had not been cashed, so that a duplicate or substitute for it was made out, and both checks were given to Dr. Hawes on August 6, 1929, to deliver personally to the claimant. In driving out to his father's place, where he lived, they passed each other on the road, and both stopped their cars and each got out and went back, and they stood in the middle of the road talking. Dr. Hawes asked the appellee what he had done with the check that was missing, and he said it was lost or he never received it, and so Dr. Hawes gave him two checks, one being the final compensation check and the other being for the period which the cashier reported had never been cashed, and Dr. Hawes requested him to sign a final release, but the appellee refused to sign the release. Dr. Hawes testified that he observed his appearance at that time; that he was very alert, jumped out of his automobile and came back on a trot, and they met half way between the two cars, which had been stopped about 100 yards apart, and the only thing the doctor noticed out of the way was that

when he reached his right hand out to shake hands he noticed that the index finger had been amputated.

The evidence discloses that the appellee cashed the duplicate check given to him on August 10, 1929, but that the second check, which had on the back of it the words, "full compensation," he did not cash, but afterwards claimed he had delivered it to his attorney. In May, 1931, the cashier discovered that one of the two checks given to the appellee on August 6, 1929, had never been cashed. Dr. Hawes thereupon called Mr. Larsen, the compensation commissioner, and asked his advice, and it was suggested that he make an attempt to find Samland and give him a duplicate check in the place of the one which he had probably lost. Dr. Hawes therefore had a substitute check prepared in the place of the one which the bookkeeper was reporting monthly to the home office as still outstanding, and with that check Dr. Hawes went to the residence of the appellee's father and found the appellee, who admitted that, while he had cashed one of the two last checks given to him, he had handed the other one to his attorney, and Dr. Hawes explained to him that he was giving him a substitute check, in the place of that one and would stop payment on the one which appellee had given to his attorney, but if he could get back the original they would like to have it for their files. At that time the appellee made no claim of any kind for any further compensation. This last check bore date of May 7, 1931, upon which day it was delivered, and upon June 22, 1931, appellee filed a petition before the compensation commissioner, setting out, among other things, that as a result of the injury to the finger a general infection and nervous condition affecting his entire body developed, so that he was totally disabled from working, except for a period of some few days, from the date of the accident until November 1, 1929, and that as a result of said infection it was necessary to secure dental treatment, and asking for an award for further and additional compensation, and said case came on for hearing before the com-

pensation commissioner at Omaha on August 18, 1931, and upon October 14, 1931, an order, dismissing appellee's petition, was entered. Thereafter a petition on appeal was filed in the district court for Douglas county on November 13, 1931. An answer was filed and trial had, and an order entered by the district court that the plaintiff was entitled to additional compensation of $15 per week for 47 weeks, with medical expenses of $75.

Section 48-138, Comp. St. 1929, provides among other things that claims for compensation shall be forever barred unless parties shall have filed a petition within one year after the accident, and provides in the last clause thereof as follows: "Where, however, payments for compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment"—and it is necessary for this court to determine whether the giving of the check upon May 7, 1931, as a duplicate or substitute check for one which had formerly been given August 6, 1929, was such a payment of compensation as extended the time to cover the filing of the petition with the compensation commissioner in this case. It is the contention of the appellee that this $15 check was a payment upon compensation as of that date, to wit, May 7, 1931, and gave the appellee the right to file a petition within one year of that date for additional compensation. But the appellant contends that such delivery of a substitute check in 1931 for one delivered and lost in 1929 is not a *last payment* on compensation such as to remove the statutory bar of limitation and permit the employee to maintain a compensation action, of which no notice had ever been given.

It is also contended by the appellant that the claim for additional compensation arising months after the delivery of the last check in payment of compensation for 35 weeks for the amputation of the finger is barred under section 48-133, Comp. St. 1929, providing: "No proceedings for compensation for an injury under this article

shall be maintained, unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof; and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same. * * * The said notice shall be in writing, shall state in ordinary language the time, place and cause of the injury; and shall be signed by the person injured."

The evidence discloses that no notice, as required by this statute, was given at any time by the appellee to the appellant; that, in the conversation May 7, 1931, with Dr. Hawes about his failure to cash the check given in final settlement, he said he had handed that check to his attorney, for he had figured perhaps on suing the Ford Motor Company, which incidental reference to a possible suit in no way complies with the plain terms of the statute. If it should be considered that this statement gave Dr. Hawes knowledge of an additional injury to be claimed by the appellee, then we are cited to the case of *Good v. City of Omaha*, 102 Neb. 654, which holds: "The mere fact that the employer has knowledge that the employee has received an injury will not dispense with the necessity of the claimant's making his claim for compensation."

In *Duhrkopf v. Bennett*, 108 Neb. 142, reference is made to the Massachusetts employer's liability act, in which there is a provision that an action thereunder must be brought within a year after the accident, and it has been held there that this is not a mere statute of limitations, but states a condition precedent to a right of action. *McRae v. New York, N. H. & H. R. Co.*, 199 Mass. 418; *Ohio Oil Co. v. Industrial Commission*, 293 Ill. 461; *Bushnell v. Industrial Board*, 276 Ill. 262; *Haiselden v. Industrial Board*, 275 Ill. 114.

■■ In considering the legal effect of giving the substitute check, we will cite the case of *Benton v. Martin*, 40 N. Y. 345, which presents a somewhat similar situation. A sight draft on New York, drawn in Olean, post-

dated the 10th of July, 1857, and before any valid presentment for payment, was lost. The defendant, knowing of the loss, subsequently drew another paper precisely in the same words and of the same date, wrote across it the word "Duplicate," and delivered it to the plaintiff; which latter paper was presented to the drawees on the 14th of August and payment refused, the drawees having failed the previous day. In an action by the plaintiff against the defendant as drawer, it was held that the true construction of the word "Duplicate," written across the draft in suit, in view of the extrinsic facts, imported that it was made as a substitute for, and to take the place of, the original, and that no new liability of the defendant was created thereby. The defendant having been discharged from liability upon the original by laches as to presentment, the plaintiff could not recover upon the duplicate.

And to the same effect is the case of *Lewis v. Commercial Nat. Bank,* 37 Tex. Civ. App. 241, which holds: "Where, after the loss of an original check, a duplicate was executed by the drawer and indorsed by the payee, such indorsement did not change the payee's relation to the original check, nor create any different liability on the duplicate than that assumed by his original indorsement." See *Bank of Gilby v. Farnsworth,* 7 N. Dak. 6, 38 L. R. A. 843; *First Nat. Bank v. McConnell,* 103 Minn. 340.

*Hanson v. Towle,* 19 Kan. 273, is cited with approval in *Nelson v. Becker,* 32 Neb. 99, and *Wallber v. Caldwell,* 79 Neb. 418. The holding in the Kansas case was: "A mere reference to the indebtedness, although consistent with its existing validity, and implying no disposition to question its binding obligation, or a suggestion of some action in reference to it, is not such an 'acknowledgment' as is contemplated by the statute. This must be an unqualified and direct admission of a present subsisting debt on which the party is liable."

In *Goodrich v. Case,* 68 Ohio St. 187, a new note was

given to take the place of an old one which was much worn, the intention of the parties being merely to renew the evidence of the old note, and it was held that the purpose and intention of the parties should govern as to its legal effect, and that such substituted new note was not a written acknowledgment of the old note so as to prevent the running of the statute of limitations against the old note.

The new check of May 7, 1931, was made by the cashier as a substitute for and to take the place of the one dated August 6, 1929, which had not been cashed, and which they were compelled to set out in their monthly reports as still outstanding, and which they assumed had been lost. As an accommodation to the appellee, but without demand on his part, they sent Dr. Hawes out to deliver the substitute check, and in delivering the same he clearly explained to appellee that the only purpose of the check he was then delivering to him was as a duplicate or substitute for the one which had not been cashed. The appellee claims a new liability was created thereby.

This court holds that a duplicate or substitute check given for another has the same validity as the original. It adds no more to the obligation and rights of the parties when it is executed at a subsequent date than when its execution is contemporaneous with that of the original. It is simply the original instrument repeated.

That original instrument, given August 6, 1929, under section 48-138, Comp. St. 1929, permitted action to be brought before August 6, 1930, at which time his right to sue on the cause of action lapsed. When appellee lost that check and was given a substitute therefor on May 7, 1931, did this voluntary replacing of the lost check start the running of the statute again? Did it give appellee a right to file suit on a cause of action, without which his right would have been barred? This court holds that it did not.

There is no claim that the appellee was suffering from any disability at the time the last check was given or his

action filed. His alleged injury had long since disappeared. His action was an attempt to obtain a money judgment. Good faith on the part of the appellee required that he notify his employer of his additional injury, if any, as required by statute. To permit a recovery in this case is not in harmony with this act, nor allowed by its provisions. At the hearing conducted by Cecil E. Matthews, chief deputy compensation commissioner, this claim for additional compensation was rejected, and this court finds that such order was right. Judgment of the district court is reversed and the action dismissed at costs of appellee.

REVERSED AND DISMISSED.