BOLIN, Judge.
Louis Dalfiume appeals suspensively from a decision holding a promissory note owned by him had prescribed.
The present appeal involves one of many questions raised by three suits, consolidated for trial, which revolved around a judicial sale of four tracts of land and the subsequent ranking of creditors in the distribution of the sale proceeds. The lower court declared the sale valid and this issue is no longer contested. There remains only the question of whether one promissory note has prescribed. Appellant urges the lower court erred in holding certain instruments executed by the debtor, subsequent to the making of the original note, were ineffective to interrupt or,' alternatively, to renounce prescription.
We shall recite as much of the proceedings as we consider necessary to a proper understanding of the present controversy. Tallulah Production Credit Association held a mortgage from Ernest and Lois Bramlett affecting four tracts of land in East Carroll Parish totalling 128 acres. By ordinary proceedings Tallulah obtained a judgment against the Bramletts for $9,057.79 and recognition of its privilege on the 128 acres of .land. After due proceedings a judicial sale was had and the *316 four tracts, although appraised separately, were sold in globo for $63,500.00 to Louis Dalfiume.
Payment of the price by the successful bidder, Dalfiume, was made in the following manner:
-1- $19,126.16 Retained by purchaser, to apply toward payment of the superior mortgage in favor of Federal Land Bank covering Tracts 1, 2 & 3. (Item ‡£2 on Clerk’s mortgage certificate)
-2- $5,545.89 Retained by purchaser, as purported owner of vendor’s' lien note originally in favor of Arlin Ross, which was treated as a first mortgage on Tract 4. (Item #1 on Clerk’s mortgage certificate)
-3- $13,133.10 Retained by purchaser, as owner of note for original sum of $10,053.64, which was surrendered to Sheriff and which is secured by mortgage in his favor on Tracts 1, 2 & 3, which mortgage is inferior to that of seizing creditor. (Item #4 on Clerk’s mortgage certificate)
-4r- $6,433.56 Retained by purchaser, as owner of note for original sum of $5,515.02, which was surrendered to Sheriff and which is secured by mortgage originally in favor of Norred-Dunlap International, Inc. on Tracts 1, 2 & 3, which mortgage is inferior to that of seizing creditor. (Item #5 on Clerk’s mortgage certificate)
-5- $19,261.29 Total $63,500.00 Paid in cash by purchaser to Sheriff.
Lake Providence Equipment Company, holder of a judicial mortgage against the Bramletts, was ranked as the creditor next in line below Dalfiume and the seizing creditor. It brought suit against Tallulah Production, Ernest and Lois Bramlett, John W. Gilbert, Sheriff of East Carroll Parish, Edna Bishop Brock, Clerk of Court, East Carroll Parish, and Louis Dalfiume. In this suit Lake Providence Equipment attacked the sale as invalid and, alternatively, alleged the note described in Item 2, supra, and used by Dalfiume in part payment of the bid price, had prescribed prior to December 27, 1967, the date of the judicial sale.
Since appellee now concedes the validity of the sale, the controversy is narrowed to the issue of the correctness of the lower court’s determination that the “Ross” note had prescribed.
The note under attack, designated the “Ross” note, was made by Ernest Bramlett in December, 1960, payable to his own order, endorsed by him in blank and delivered to Arlin Ross as payment for Tract #4 of the Bramlett property. The note was paraphed for identification with a mortgage and vendor’s lien on the property purchased. This mortgage was recorded and appeared as a first mortgage on Tract *317 #4 in the mortgage certificate submitted by the clerk of court in connection with the sheriff’s sale. The original amount of the note was $3550 and the due date was November 15, 1961. It is not disputed Dal-fiume furnished the funds for the purchase by Bramlett of the tract for which this note and mortgage were executed and became the holder of the note.
In August, 1964, Dalfiume was the victim of a burglary and theft when his safe' was stolen from his store and the “Ross” note, together with numerous other notes and records, was lost. Through diligent effort Dalfiume obtained substitute notes from the various debtors who, on August 31, 1964, executed an authentic act wherein it was recited:
“Mortgagors declared that they are presently indebted to the said Louis Dal-fium,e for the amounts set. opposite their names hereinbelow, represented by the hereinafter described notes, which were stolen and are presumed destroyed, secured by the described mortgages and/or Crop Liens and Chattel Mortgages, to-wit:
“G) Ernest B. Bramlett: (1) One note dated December 17, 1960, for the sum of $3550.00, due on or before November 15, 1961, with 8% interest from date, secured by Chattel Mortgage dated December 17, 1960, filed and recorded as Chattel Mortgage #53113 * * *” (Emphasis ours)
On that date Bramlett signed and endorsed the “substitute” note for $3550.00 the amount of the debt, and it was delivered to Dalfiume.
Just prior to the sheriff’s sale, on December 27, 1967, it was discovered the note was paraphed with a chattel mortgage but contained no reference to the real property mortgage, whereupon Dalfiume requested Bramlett to execute a “correction” note in order that it might properly reflect the note was secured by a mortgage and vendor’s lien. This note, which was introduced into evidence along with the authentic act and the substitute note, bears the signature of Ernest B. Bramlett and recites the note is secured by an act of “correction to Act providing for substitution of notes stolen and presumed destroyed”. This $3550 note, together with the interest calculated from date of origin, totalled $5545.89 and was relinquished to the sheriff as part payment on the $63,500 purchase price- of the property bought at the sheriff’s sale. (See item 2, supra)
In his written reasons for judgment the trial judge stated:
“Since the note was prescribed on its face, the burden of proving the interruption of prescription rests upon the creditor Dalfiume and the proof must be clear, specific and positive. C.C. Art. 3520; Landry v. Guidry, (1946), [210 La. 194] 26 So.2d 695; State ex rel Sunseri v. Thoman ([La.App.] 1961) 135 So.2d 791.”
We consider this to be a correct statement of the law with regard to the burden of proof. However, the trial judge attached a great deal of weight to the following quotation in the instrument executed at the time the substitute notes were obtained:
“Mortgagors do each declare that the note hereby executed and issued by him is to be considered and dealt with for all purposes and in every respect just as though it were the one originally issued and since stolen and presumed destroyed; and the said Louis Dalfiume declared that he hereby accepts the same for such purposes.”
The district judge concluded it was impossible to read into the provisions of this authentic act any intent to extend the prescriptive period. He further held the corrective instrument signed by Bramlett on the date of the sale was not an acknowledgment that would revive the “Ross” note and concluded there must have been proof of payment to interrupt prescription. *318 After examination of the testimony regarding certain alleged payments he held the evidence insufficient to establish interruption by payment.
We agree with the conclusion that payment was not established; however, we disagree with the finding of the trial judge that neither the authentic act nor the substitute note interrupted prescription.
It may be true that, since the original note was executed in 1960 and payable in 1961, the note was prescribed on its face in 1967. However, at a time when all parties were unsuspecting and in good faith, the substitute note was executed by Bram-lett, signed and endorsed by him for the exact amount of the original note and this substitute note was dated August 31, 1964. On that date the debtor by his acts admitted the creditor’s right to be paid the amount stated and the note reflected no payments had been made. Further, the note incorporates a “promise to pay”.
Louisiana Civil Code Article 3520 provides :
“Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed.”
We are aware of the long line of mineral cases in which the courts have effectively added the requirement that the acknowledgment must be not only clear and concise but it must also be coupled with an express intention of the party “to interrupt prescription by such acknowledgment”. See Nabors, The Louisiana Mineral Servitude and Royalty Doctrines (Part 2,), 25 Tulane Law Rev. 303.
However, we are unable to discern an adoption of the “acknowledgment-intention” theory in cases other than those involving mineral servitudes. For an enumeration and review of various ways in which prescription may be interrupted see Comment, Interruption of Prescription by Acknowledgment in Louisiana, 14 Tulane Law Rev. 430. The cases have held acknowledgments sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest, by pledge and by a request for an extension of time in which to pay.
We find the substitute note signed by Bramlett in 1964, coupled with the authentic act acknowledging the fact of the indebtedness and expressing recognition of the right of the creditor, fulfilled the requirements of Civil Code Article 3520, thereby effectively interrupting prescription running on the debt represented by the note. Having reached this conclusion it is unnecessary to decide the legal effect of the execution of the “correction” note by Bramlett to Dalfiume in December, 1967.
Only one judgment was rendered in the consolidated cases and only one of these cases has been appealed. Therefore, the only portion of the judgment of the lower court before us is:
“It is ORDERED, ADJUDGED AND DECREED that there be judgment herein against Louis Dalfiume for the sum of FIVE THOUSAND FIVE HUNDRED FORTY FIVE AND 89/100 ($5,545.89) DOLLARS, and that the said Louis Dalfiume immediately deposit this sum, in cash, with the Honorable Sam L. House, Jr., Sheriff of the Parish of East Carroll, Louisiana, successor to John W. Gilbert.”
For the reasons assigned the judgment appealed from is reversed and the demands against Louis Dalfiume are rejected at appellee’s cost.