SUMMERS, Justice.
 

 A question of acknowledgment of a debt under Article 3520 of the Civil Code is presented for decision here. The case arises out of a foreclosure proceeding and affects the division of the proceeds of a Sheriff’s sale.
 

 On December
 
 17,
 
 1960 Ernest Bramlett executed a promissory note in the principál amount of $3,550 to the' order of fnaker; endorsed in blank, due on or before No
 
 *107
 
 vember 15, 1961, with 8 percent per annum interest. The note was paraphed “Ne Varietur” for identification with a vendor’s lien and mortgage of even date affecting real property owned by Bramlett.
 

 Seven years and ten days later all the property Bramlett owned, including that mortgaged to secure the $3,550 note of December 17, 1960, was sold at public sale under a writ of fieri facias in foreclosure proceedings instituted by Tallulah Production Credit Association. Louis Dalfiume was the successful bidder acquiring the property for $63,000.
 

 In payment to the Sheriff, Dalfiume retained in his hands an amount sufficient to pay (a) the claims of mortgages superior to the foreclosing creditor, and (b) the amounts due on account of mortgage notes which he owned affecting the property foreclosed upon, including the $3,550 note with accrued interest. The balance of the bid price of $63,000 Dalfiume paid to the Sheriff.
 

 The amount bid and paid by Dalfiume was insufficient to discharge all recorded liens against the Bramlett property; accordingly, plaintiff Lake Providence Equipment Co., Inc., the first ranking unsatisfied creditor, filed this suit challenging the right of Dalfiume to retain the amount necessary to satisfy the $3,550 mortgage note of December 17, 1960 which, with accrued interest, amounted to $5,-■545.98.
 

 Dalfiume’s defense is based upon the contention that the debt represented by the note of December 17, 1960 had been acknowledged and was not, therefore, prescribed, and the funds for its payment in principal and interest were properly retained by him as owner of the note.
 

 On August 21, 1964, prior to the foreclosure, Dalfiume’s safe was burglarized, at which time the notes and other valuables deposited there were stolen. Dalfiume successfully obtained the signatures of Bramlett and twelve other makers of the stolen mortgage notes to an instrument dated August 31, 1964, which, insofar as Bramlett’s note was concerned, read as follows:
 

 The said Louis Dalfiume declared that he is the last owner and holder of the promissory notes hereinafter described and that all of said notes were stolen from the safe in his store at Transylvania, Louisiana, on the day of Friday, August 21, 1964, and are presumed to have been destroyed.
 

 Mortgagors declared that they are presently indebted to the said Louis Dalfiume for the amounts set opposite their names hereinbelow, represented by the hereinafter described notes, which were stolen and are presumed destroyed, secured by described mortgages and/or Crop Liens and Chattel Mortgages, to-wit:
 

 ***** *N
 

 
 *109
 
 G) Ernest B. Bramlett: (1) One note dated December 17, 1960, for the sum of $3,550.00, due on or before November 15, 1961, with 8% interest from date, secured by Chattel Mortgage dated December 17, 1960, filed and recorded as Chattel Mortgage No. 53113 in Chattel Mortgage Book “DD” at page 240 on January 5, 1961;- — ■
 

 ******
 

 Each mortgagor then further declared that he has simultaneously with the execution hereof, issued and executed a duplicate of the note and/or notes hereinabove described opposite his name, and each of said notes having been paraphed “Ne Varietur” by me, Notary, for identification with “An Act Providing for Substitution of Notes Stolen and Presumed Destroyed”, and for identification with the mortgage securing same and wherein said note is fully described, were delivered to Mortgagee herein, said Louis Dalfiume, who hereby acknowledges receipt thereof.
 

 And the said Louis Dalfiume — accepts the duplicates aforesaid as the sole evidence of the obligation therein described, and indemnifies each mortgagor herein of and from any loss or injury which might be a direct result of his execution and issuance of the duplicate note or notes.
 

 The act then specifically provides in detail for cancellation of the recorded mortgages upon presentation only of the duplicate notes, rather than the originals, and concludes with the following:
 

 Mortgagors do each declare that the note hereby executed and issued by him is to be considered and dealt with for all purposes and in every respect just as though it were the one originally issued and since stolen and presumed destroyed; and the said Louis Dalfiume declared that'he hereby accepts the same for such purposes.
 

 A correction instrument was later executed by Bramlett and Dalfiume on December 27, 1967, the date of the sheriff’s sale, reciting that the Bramlett note referred to in the instrument of August 31, 1964 was in fact secured by a real estate mortgage and not the chattel mortgage referred to in the instrument of August 31.
 

 Both parties recognize the central issue to be whether the instrument of August 31, 1964 constitutes such an acknowledgment of the indebtedness represented by the note identified with the real estate mortgage of December 17, 1960 that the five-year-prescriptive period provided for by Article 3540 of the Civil Code was interrupted. The trial judge found that there was no acknowledgment and that the note of December 17, 1960 had prescribed. On appeal, the Second Circuit reversed. 228 So.2d 315. We granted certiorari. 255 La. 162,229 So.2d 737.
 

 
 *111
 
 Article 3540 of the Civil Code provides:
 

 Actions on bills of exchange, notes payable to order of bearer, except bank notes, those on all effects negotiable or .transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable.
 

 And Article 3520 of the Code declares that, “Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribe.” See also La. Civil Code art. 3551 et seq.
 

 When a note is prescribed on its face, the burden of proving that prescription has been interrupted rests upon the one who asserts the prescription, and the proof must be clear, specific and positive. Landry v. Guidry, 210 La. 194, 26 So.2d 695 (1946); Waterman v. Dupeire, 180 La. 320, 156 So. 405 (1934); Union National Bank v. Evans, 43 La.Ann. 372, 9 So. 44 (1891). Under this rule, Dalfiume bears the burden of proving that prescription was interrupted. In support of this position reliance is placed entirely upon the quoted language of the instrument of August 31, 1964.
 

 As we read that document it does nothing more than replace the lost note with a “duplicate” as evidence of the obligation which the lost note represented. See State v. Keystone Life Insurance Co., 93 So.2d 565 (La.App.1957), for a definition of “duplicate”. The Act itself is called “An Act Providing for Substitution of Notes Stolen and Presumed Destroyed.” For a definition of “substitute” see Fullilove v. United States Casualty Company of New York, 240 La. 859, 125 So.2d 389 (1961). See also 11 Am.Jur.2d, Bills & Notes, Sec. 59; 10 C.J.S. Bills and Notes § 429 d. Thus, when the Act of August 31, 1964 provided that Dalfiume “indemnifies each mortgagor herein of and from any loss or injury which might be a direct result of his execution and issuance of the duplicate note or notes,” Bramlett was assured that by executing the duplicate note he did not place himself in a more onerous position than he would have occupied if the original note had not been lost. An interruption of prescription would obviously have been detrimental. .The assurance that no additional liability would be incurred by Bramlett is made emphatic in the following language of the same document already quoted, which we repeat for emphasis:
 

 Mortgagors do each declare that the note hereby executed and issued by him is to. be considered and dealt with for all purposes and in every respect just as though it were the one originally is- • sued , and since _ stolen and presumed destroyed; and the said Louis Dalfiume ¡declared that he hereby accepts the same for such purposes.- .
 

 
 *113
 
 The proper solution to this problem was reached by the Supreme Court of Ohio in Goodrich v. Case, 68 Ohio St. 187, 67 N.E. 295 (1903), where the Court said:
 

 The substituted note deals only with the original debt as of the date of the original note, and was given in its place and stead, and was not given as a new promise or a new acknowledgment, but only to presérve in lasting form, on good paper, the old promise and old note. * * * To make a copy of a note is not an acknowledgment of such note, nor a promise to pay the same, and this is so whether the copy is made by the maker or a stranger.
 

 ******
 

 The object of making written instruments is to show the purpose and intention of the parties. The acknowledgment or promise which takes a note out of the statute of limitations is an acknowledgment or promise outside of the note itself, or a mere copy thereof. The note is the object, and the acknowledgment or promise must be as to that object. The note must be. acknowledged as existing, and the promise must be to pay such existing note. The making of a note or a copy thereof cannot at the same time serve the double purpose of a making, and also of an acknowledgment or promise to pay. The proposition is absurd.
 

 Acknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other Ways. It may be implicit or it may be inferred from the facts and circumstances. Comment, Interruption of Prescription by Acknowledgment in Louisiana, 14 Tul.L.Rev. 430 (1940).
 

 Our holding is that an inference of acknowledgment may not be drawn from the document under consideration. To the contrary, the language negatives any inference to that effect or that the debtor’s position would be made more burden some by executing that document. The language of the instrument carefully restricts the purpose it seeks to accomplish to the single act of furnishing a duplicate note, reciting the indebtedness of Bramlett as the reason for furnishing the duplicate note.
 

 Nothing about the Act would warrant any conclusion other than the one so clearly expressed to the effect that a duplicate note was being furnished to have the same force and effect as the lost note which was presumed to be destroyed. It is the original note repeated; it adds no more to the rights, obligations or liabilities of the parties. Samland v. Ford Motor Co., 123 Neb. 819, 244 N.W. 404 (1932).
 

 In these cases dealing with acknowledgment, the facts and circumstances of each
 
 *115
 
 case are to be carefully considered to ascertain whether an acknowledgment has occurred. Hence the law will not support inferences which are inconsistent with the express langauge of the agreement in question.
 

 Another contention urged by Dalfiume is that payments had been made on this note within the five-year-prescription period subsequent to the note’s maturity. Thus the prescription which would have operated to release the debt on November 15, 1966 was interrupted. This contention is without merit for, among other factors, Dalfiume represented at an unauspicious time that the full amount of principal and interest was due on the note. He did this when he itemized the contested note as a credit on the bid price in his accounting with the Sheriff. For him to later say a credit was omitted from the computation of the amount due on account of a payment on the note when the issue of prescription was at issue is, to say the least, inconsistent. Both the trial court and Court of Appeal discounted this contention as we do.
 

 Since neither contention is well-founded, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the District Court is reinstated and made final.
 

 TATE, J., was not a member of the Court at the time this matter was argued.