CARAWAY, J.
_JjIn this case, appellant defaulted on her vehicle financing agreement and surrendered possession of the vehicle to her creditor. Thereafter, the creditor sold the vehicle and a deficiency balance remained. Subsequently, the > creditor assigned the contract to appellee. Appellee sought a deficiency judgment which was granted by the trial court on appellee’s motion for summary judgment. Finding that appel-lee has produced sufficient evidence in support of the granting of summary judgment, we affirm. ■<

Facts

On February 28, 2006, appellant, Linda R. Nash (“Nash”), entered into a retail installment contract and security agreement (“the Contract”) with Elkins Nissan for the purchase of a 2006 Nissan Maxima (“the Vehicle”). The Contract contained a promissory note with the principal amount listed as $30,838.43 with an finance charge of 11% per year. .Nash made a, down payment of $1,500 and agreed to make monthly payments due on the. 14th of each month, beginning on April 14, 2006.
The Contract provided the seller a security interest in the Vehicle. The Contract also incorporates an assignment provision by which Elkins Nissan eventually assigned the Contract to Wells Fargo Auto Finance, Inc. (“Wells Fargo”).
Notably, the Contract also contains language regarding default and deficiency judgment:
Default: You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract.
|2B. We, in good faith, believe that you cannot or will not, pay or perform the obligations you have agreed to this Contract.
If you default, to the extent permitted by law, you agree to pay all'the out of pocket collection costs and expenses we incur to collect the debt and realize on any security; You also agree to pay such additional collection costs and expenses that may be authorized by law, including colleetion/enforcement attorney fees in an amount not to exceed 25% of the total amount payable under this Contract. .
[[Image here]]
*261 Remedies: If you are in default on this Contract, we have, subject to any right to cure that you may exercise, all of the remedies provided by law and this. Contract:
⅝ ⅜ H>
C. We may sell the Property, as provided by law, if the Property is in our possession or if you voluntarily deliver or surrender the property to us.
[[Image here]]
F. We may, if allowed by law, sue you for additional amounts if the proceeds of a sale do -not pay all of the amounts you owe us.
Sometime in 2008, Nash defaulted on the Contract and Wells Fargo gained possession of the Vehicle. On April 23, 2009, Wells Fargo sold the Vehicle at private auction for a total sales price of $11,077.80.
On May 19, 2011, Wells Fargo assigned the Contract to appellee, Autovest, L.L.C. (“Autovest”).' Subsequently, on June 28, 2013, Autovest filed suit against Nash. Au-tovest alleged that Nash was in default of the Contract, which caused the Vehicle to be repossessed and sold, with the net proceeds being applied to the debt. Therefore, pursuant to the terms of the Contract, Autovest averred that it was entitled to a judgment for the deficiency balance of $8,096.69, plus interest, costs, and attorneys fees.[1] .
In answer, Nash conceded that she had stopped making payments sometime in 2008 and that she received notice in 2009 of the Wells Fargo proceedings to sell the Vehicle. However, she alleged that Wells Fargo did|anot seize the Vehicle. Instead, she asserted that after she stopped making payments, she entered into an over-the-phone verbal agreement with a Wells Fargo representative. Nash stated that the representative told her that if she voluntarily surrendered the vehicle, all terms of the Contract would be satisfied. She alleged that since she complied with this agreement in January of 2009, she was not indebted to Autovest. Additionally, Nash essentially alleged fraud, asserting that the Contract was invalid because her “proof of income” was not established when she signed the Contract. In support of this final allegation, Nash attached, a copy of her initial loan application.
On February 18, 2015, Autovest filed a motion for summary judgment. In support, Autovest attached the affidavit of an authorized representative who confirmed the allegations of Autovest’s petition. In addition to this affidavit, Autovest attached several other documents:
1) A copy of the Contract.
2) A copy of the document showing Wells Fargo, N.A.- assigning the Contract to Autovest,
3) A copy of a “Deficiency Explanation .Letter,” dated April 27, 2009, that Auto-vest sent to Nash.
4) A copy of a “Collateral Liquidation Transmittal” which shows the balance of Nash’s debt prior to the auction- and the auction proceeds.
5) A copy of the Sale Contract showing the sale of the vehicle-at the auction.
The affiant certified all of these exhibits as true and correct.
Nash replied with the peremptory exception of prescription, arguing that La. C.C. art. 3498 provides a liberative prescriptive period of 5 years for actions on instruments and prescription commences to run from the day payment is exigible; Nash argued that payment under the Contract was | ¿exigible in 2008 when she *262 stopped making payments, more than 5 years before the filing of this suit. In addition to arguing the applicability of prescription, Nash reasserted the allegations from her answer, alleging extinguishment of debt once she voluntarily surrendered the Vehicle and fraud. However, no opposition evidence to the motion for summary judgment was presented by Nash.
On June 10, 2015, the trial court held oral proceedings and found in favor of Autovest, granting its motion for summary judgment. This appeal followed.

Discussion

Autovest argues the trial court properly granted its motion for summary judgment. It avers that it has submitted detailed evidence that Nash signed the Contract and verified statements showing the deficiency balance. Autovest argues that Nash has not presented any countervailing evidence which would raise any genuine issue of fact. Nash counters with the same three arguments she presented to the lower court.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smitko v. Gulf S. Shrimp, Inc., 11-2566 (La.7/2/12), 94 So.3d 750; Rain and Hail, L.L.C. v. Davis, 49,813 (La.App.2d Cir.5/20/15), 165 So.3d 1204; Monroe Surgical Hosp., LLC v. St. Francis Med. Ctr., Inc., 49,600 (La.App.2d Cir.8/21/14), 147 So.3d 1234, writ denied, 14-1991 (La,11/21/14), 160 So.3d 975. Summary judgment is appropriate if the pleadings, ^depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Rain and Hail, supra. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. La. C.C.P. art. 967(B); Luther v. IOM Co., 13-0353 (La.10/15/13), 130 So.3d 817; Brooks v. Transamerica Financial Advisers, 45,833 (La.App.2d Cir.2/2/11), 57 So.3d 1153. If the moving party supports the motion for summary judgment with affidavits, the nonmoving party may not rest on the mere allegations or denials of her petition. La. C.C.P. art. 967; Lacure v. Brookshire’s Stores, 38,627 (La.App.2d Cir.6/23/04), 877 So.2d 264.
Security interest means an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation. La. R.S. 10:1-201. Contracts intended to create security agreements have special form requirements. La. R.S. 10:9-203; Tyler v. Rapid Cash, LLC, 40,656 (La.App.2d Cir.5/17/06), 930 So.2d 1135. La. R.S. 10:9-203 provides, in part:
(b) Enforceability. Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
(1) value has been given;
(2) the debtor has rights in the collateral or the- power to transfer rights in the collateral to a secured party; and
(3) one of the following conditions is met:
|fi(A) the debtor has authenticated a security agreement that provides a description of the collateral.
“Authenticate” means “to sign; or to execute or otherwise adopt a symbol, or encrypt or similarly process a record in *263 whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.” La. R.S. 10:9-102.
In this matter, Nash does not dispute that the Contract contains a properly authenticated security agreement. Wells Fargo financed the purchase of the Vehicle, of which Nash became the owner. Importantly, for our consideration, Nash also admits that on an unspecified date in 2008, she stopped making payments, which was a default under the terms of the Contract.
The Contract provides that “as provided by law” and “if allowed by law,” if a party defaults, the secured party is granted authority to sell the collateral and .sue for any additional amounts if the sale does not satisfy the total obligation. La. R.S. 10:9-610 states that after default:
[a] secured party may sell,. lease, ,li- . cense, or otherwise dispose of any or all of the collateral in its present condition or following any. commercially reasonable preparation or processing.
If a deficiency remains after the secured party exercises the rights provided Under La. R.S. 10:9-610, the secured party may seek the remaining balance from the party in default. La. R.S. 10:9-616. The pertinent parts of La. R.S. 10:9-615 provide as follows:
(a) Application of proceeds. A secured party shall apply or pay over for application the cash proceeds of disposition under R.S. 10:9-610 in the following order to:
[ 7(1) the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, and to the extent provided by agreement and, not prohibited by law, reasonable attorney’s fees and legal expenses incurred by the secured party;
[[Image here]]
(d) Surplus or deficiency if obligation secured. If the security interest under which a disposition is made secures payment or performancé of an obligation, after making the payments and applications required by Subsection (a)
[[Image here]]
(2) the obligor is liable for any deficiency.
From our review of the admitted evidence, we find that Autovest, as the moving party, has produced sufficient evidence to support the granting of summary judgment. After Nash defaulted under the Contract, Wells Fargo was given possession of the Vehicle by Nash. Thereafter, Wells Fargo sold the Vehicle and a deficiency balance remained. Subsequently, Wells Fargo assigned the Contract to Au-tovest and the right to pursue the deficiency.. ■ ■
Having made this determination, we now consider whether Nash, as the nonmoving party, has produced evidence of a defense or has shown that a material factual dispute remains. Under the Contract ■ and governing statutes, the rights of an assign-ee are subject to any defense or claim of the account debtor against, the assignor which accrues before the account debtor receives a notification of the assignment. La. R.S. 10:9-404.

Prescription

Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription ■ commences to run from the day payment is exigible. La. C.C. art. 3498. Prescription is ' interrupted when one | «acknowledges the right of the person against whom he had commenced to prescribed. La. C.C. art. 3464. The comments to this article state -specifically that “liberative prescription is interrupted *264 when the debtor acknowledges the right of the creditor.”
“Acknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways,” like being “inferred from the facts and circumstances.” Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass’n, 257 La. 104, 241 So.2d 506, 509 (1970). Tacit acknowledgment occurs when the debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Lima v. Schmidt, 595 So.2d 624 (La.1992); Crain v. Pletka, 35,636 (La.App.2d Cir.1/23/02), 806 So.2d 950.
Here, payment was exigible on the Contract each month on the 14th in 2008 when Nash stopped making payments. Autovest filed suit for the deficiency on June 28, 2013. Nevertheless, Nash did not present evidence of the last time in 2008 of her payment on the debt. Therefore, Nash did not clearly,show that the 5-year prescriptive period had run.
Moreover, Nash admits that she voluntarily surrendered the Vehicle on á unknown date in January of 2009 and the record reflects that the private sale did not occur until April 23, 2009. Therefore, under La. C.C. art. 3464 and the cited jurisprudence, Nash’s admitted surrender to the creditor of the Vehicle was an acknowledgment of Wells Fargo’s rights as creditor. Cf. Kaplan v. University Lake Corp., 381 So.2d 385, 387 (La.980) (explaining, in the analogous setting, that detention by the pledgee serves as a constant acknowledgment of the debt). This acknowledgment interrupted prescription through the time of the sale of the Vehicle which occurred well within the five years of the filing of this action. Accordingly, the denial of the exception of prescription is affirmed.

Modification and extinguishment of debt

Next, Nash argues that pursuant to a verbal agreement with a Wells Fargo representative, the Contract was modified and her debt extinguished once she voluntarily surrendered the Vehicle as a result of a giving in payment. La. C.C. art. 2655.
Giving in payment is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt. Id. The critical consideration in determining whether a transaction is a giving in payment is the intent of the parties, particularly of the creditor, who has the right to demand exactly what was due by virtue of the obligation. Comment (b) to La. C.C. art. 2655.
If the price or value is in excess of $500, the contract must be proved by at least one witness and other corroborating circumstances. La. C.C. art. 1846. La. C.C. art. 1848 provides the following:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest, of justice, that evidence may be admitted to prove such circumstances as a vice , of consent or to prove that the written act was modified by a subsequent and valid oral agreement.
Autovest has produced an act under private signature providing that it and its predecessors were entitled to receive possession of the Vehicle upon |1nNash’s default and to seek a deficiency judgment. Therefore,' the burden was bn Nash to show modification of this act. In support of this burden, Nash has not produced evidence by a Wells Fargo agent admitting that the Contract was modified pursuant to a subsequent and valid1 oral agreement for a giving in payment. Instead, Nash relies on her own self-serving allegation, *265 which does not indicate • that she would prevail with this defense at trial. La. C.C.P. art. 967(B). We find that La. C.C. art. 1848 is also applicable and do not feel that it.is “in the interest of justice” to allow Nash’s mere allegations to overcome the granting of summary judgment.

Fraud

Finally, Nash’s third assertion amounts to a claim of fraud. On appeal, Nash argues that her loan application contains a false employment history. Nash asserts that the same Wells Fargo representative with whom she entered into the verbal agreement to cancel the debt notified her of this fraud in February of 2009. She submits that if her correct employment history had been listed on the application, she would never have been approved for the loan, therefore, the Contract is invalid.
Similar to Nash’s argument regarding remission of the debt, this assertion is not supported by affidavit or deposition. Plainly stated, there is no evidence, absent Nash’s assertion, that this conversation ever occurred or that someone entered false information on her loan application, without her knowledge; after Nash signed the application. Therefore, this unsubstantiated assertion does not overcome the granting of summary judgment.
I ^Conclusion
For the reasons set forth above, the trial court’s judgment is affirmed at appellant’s costs.
AFFIRMED.

. On the face of the documentation of the car loan and subsequent sale, it indicates that Autovest could have sought more, but there is no dispute as to the amount of deficiency.