PITMAN, J.
|! Defendant-Appellant Robert Simmons appeals the judgment of the trial court in favor of Plaintiff-Appellee Domina Beth-ley. For the following reasons, we reverse the judgment of the trial court.

FACTS

On April 9, 2015, Mr. Bethley filed a petition in which he requested damages in the amount of $684.16 in medical bills, $1,045.80 in lost wages, $5,000 for pain and suffering and $120 for court costs. He alleged that, on July 7, 2012, Mr. Simmons was operating a saw that cut Mr. Bethley’s ankle. Mr. Bethley alleged that Mr. Simmons promised to pay his medical bills in full, but that he did not do so.[1]
On April 17, 2015, Mr. Simmons filed an answer. He stated that the injury occurred on July 7, 2012, and that over a year elapsed before Mr. Bethley filed his petition. Mr. Simmons contended that Mr. Bethley lost his right to sue because his petition was untimely.
On July 2, 2015, Mr. Simmons filed an exception of prescription, alleging that any claim was filed more than one year after the events giving rise to any alleged claim or cause of action.
A hearing was held on July 9, 2015, and neither party was represented by counsel. Mr. Bethley testified that, on July 7, 2012, he and his father were cutting limbs in his backyard when his neighbor Mr. Simmons came over and asked to use the 12-foot pole saw. He explained that the chainsaw was attached to an extension that is used to cut limbs. He stated that he fallowed Mr. Simmons to try out the chainsaw for 15 minutes and then asked him to ’ stop. At that point, Mr. Simmons turned toward him and the chainsaw cut his ankle. As he was getting in the car for his father to take him to the hospital, Mr. Simmons told him that he would pay his medical bills and asked that his wife not be told. He stated that the cut to his ankle was deep and surgery was performed. He noted that his medical bills totaled over $14,000. His insurance company paid 80 percent of his medical bills and Mr. Simmons made payments totaling $180 directly to the hospital; however, Mr. Simmons stopped making payments and a balance of $684.16 remained. He contended that he was entitled to $1,045.80 in lost wages because he was unable to work for three days due to the injury. He also requested $5,000 for pain and suffering and explained that the safety equipment he wears at work aggra *306 vates the pain in his ankle and that he has nerve problems in his leg.
Michael Newton, Mr. Bethley’s father, testified that, on July 7, 2012, he was watching Mr. Bethley and Mr. Simmons cut a limb off a tree and the pole saw “bumped [Mr. Bethley’s] leg,” which began to bleed. He stated that Mr. Bethley showed Mr. Simmons the injury and Mr. Simmons said he would “take care of it” and asked that they not tell his wife.
Mr. Simmons testified that, on July 7, 2012, he was helping Mr. Bethley cut a limb and Mr. Bethley “got in the way of the saw.” He stated that he did not intend to cut Mr. Bethley. He further stated that he did not promise Mr. Bethley he would pay him, but merely said that he would help if he could. He testified that he did not make - any payments on the medical bill, but did give Mr. Bethley money because he said he would help. He further testified that he did not sign any agreement and denied saying that [ahe would pay the medical bills. He agreed that he was at fault for the injury, but emphasized that the statute of limitations for making a claim had run.
On July 21, 2015, the trial court filed a judgment denying the exception of prescription and awarding Mr. Bethley $5,000 for pain and suffering, $684.16 plus interest for medical bills and $1,045.80 for lost wages and assessing court costs to Mr. Simmons.
Mr. Simmons appeals.

DISCUSSION

Oral Agreement to Pay Medical Bills

In his first assignment of error, Mr. Simmons argues that Mr. Bethley is not entitled to recover from him under the alleged oral agreement to pay the medical bills because such an oral agreement cannot be proved by parol evidence and is otherwise unenforceable. He denies that he agreed to pay Mr. Bethley’s medical bills. However, Mr. Simmons notes that, if Mr. ■Bethley’s testimony that he did promise to pay the medical bills is accepted, then he argues that Mr. Bethley’s testimony is insufficient to prove a valid agreement. He argues that, because the petition has prescribed on its face, Mr. Bethley had the burden of proving that prescription had not run. He contends that Mr. Bethley did not offer any evidence as to the date of an alleged acknowledgment, other than to state that he made an oral acknowledgement after May 22, 2013, i.e., the date of the most recent payment on the medical debt. He argues that, even if Mr. Bethley’s testimony is accepted, there is no basis for concluding that he acknowledged the debt on or after April 9, 2014; and, therefore, prescription had run when Mr. Bethley’s petition was filed on April 9, 2015.
|4Mr. Bethley argues that he is entitled to recover from Mr. Simmons under the oral agreement to pay the medical bills because the agreement was made in the presence of a witness, i.e., Mr. Newton. He notes that Mr. Simmons paid $180 to St. Francis Medical Center toward- the medical bills and stopped making payments' in May 2013. He alleges that Mr. Simmons made excuses for why he did not make further payments and continually reaffirmed that he would honor his verbal agreement to pay the medical bills.
Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492.. This prescription commences to run from the day injury or damage is sustained. Id. The party asserting prescription carries the burden of proof unless the plaintiffs claim is barred on its face, in which case the burden shifts to the plaintiff to prove that the prescrip *307 tive period has been suspended or interrupted. Mallett v. McNeal, 05-2289 and 05-2322 (La.10/17/06), 939 So.2d 1254; Jackson v. Hicks, 49,199 (La.App.2d Cir.8/13/14), 147 So.3d 283.
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La. C.C. art. 3464. Such an acknowledgment is not subject to any particular formality. Mallett v. McNeal, supra. It may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways. Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass’n, 257 La. 104, 241 So.2d 506 (1970); Jackson v. Hicks, supra. It may be implicit or it may be inferred from the facts and circumstances. Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass’n, supra. The Louisiana Supreme Court in Lima v. Schmidt, 595 So.2d 624 (La.1992), explained:
|SA tacit acknowledgment occurs when a debtor performs acts of reparation or ' indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments .... Our courts have added,to the above generalizations other criteria that, evidence an acknowledgment,, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period. Conversely, our courts have recognized that mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment.
Prescription commences to run anew from the last day of interruption. La. C.C. art. 3466.
In the case sub judice, the accident occurred,on July 7, 2012, and Mr. Simmons allegedly promised to pay the medical bills on the same day. The demand bill from the hospital shows that self-payments on the bill were made on September 17, 2012($30); October 12, 2012($40); November 21, 2012($20); December 12, 2012($20); January 16, 2013($20); April 16, 2013($20); and May 22, 2013($10). Mr. Bethley testified that these "payments were made by Mr. Simmons. Mr. Bethley filed his petition for medical bills, lost wages, pain and suffering and court costs on April 9, 2015.
Prescription began to run on July 7, 2012, i.e., the day injury or damage was sustained. The last payment by Mr. Simmons was made on May 22, 2013. Nothing in the record suggests that any actions interrupted prescription after this date. Assuming that the payments made by Mr. Simmons constituted an acknowledgement that interrupted prescription, prescription began to run anew after the May 22, 2013 payment. When Mr. Bethley filed his petition on April 9, 2015, more than one year had elapsed. | ¡¡Therefore, the trial court erred when it denied Mr. Simmons’ exception of prescription because Mr. Bethley filed his petition beyond the one-year prescriptive period..
Accordingly, this assignment of error has merit.

Recovery

In his second assignment of error, Mr. Simmons argues that even if the alleged oral agreement is enforceable, the only amount Mr. Bethley can recover under the agreement is the $684.16 in medical bills that he agreed to pay. He contends that the trial court erred in going beyond the scope of .the alleged oral agreement to pay *308 medical ■ bills by making awards for lost wages and general damages because these claims had prescribed.
Mr. Bethley argues that an oral contract can be enforceable and that he is entitled to $684.16 for medical bills, $1,045.80 for lost wages, $5,000 for general damages and for court costs to be assessed to Mr. Simmons.
For the reasons discussed, supra, we find that Mr. Bethley filed his petition beyond the one-year prescriptive period. Therefore, he is not entitled to recover medical bills, lost wages, general damages or court costs.
Accordingly, this assignment of error has merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Plaintiff-Appellee Domina Bethley and against Defendant-Appellant Robert Simmons is reversed. Court costs are assessed to Plaintiff-Appellee Domina Bethley.
REVERSED.

. Attached to his petition were a letter from his manager at work stating he missed a significant amount of work in July and August 2012 due to an ankle injury, letters from physicians at St. Francis Medical Center stating that he needed to be on light duty at work in July 2012, a bill for $684.16 in medical expenses that also listed payments that had been made, and photographs of the pole saw and injured ankle.