CRAIN, J.
lain this suit seeking to enforce a promissory note secured by a mortgage, the trial court entered an order that prohibits the plaintiff from using certain evidence as a sanction for noncompliance with court-ordered discovery. Thereafter, the trial court granted peremptory exceptions of no right of action and prescription and dismissed the case. We affirm the order imposing the discovery sanction, reverse the judgment granting the peremptory exceptions, and remand.
*424 FACTS AND PROCEDURAL HISTORY
JP Morgan Chase Bank, N.A. filed a petition on June 1, 2011, against Boolus Boohaker and Bonnie Bivens Boohaker, alleging that the Boohakers executed a promissory note on June 11, 1992, payable to the order of Premier Mortgage Company. Chase also sought judicial recognition, via ordinary process, of a mortgage on certain immovable property securing repayment of the note.
According to the allegations of the petition, Chase acquired ownership of the note as a result of a series of transactions. Specifically, Chase alleged that Premier Mortgage, the original payee, transferred and assigned the note to Premier Bank, N.A., which was then acquired by Banc One Mortgage Corporation, who, in turn, transferred and assigned the note to Homeside Lending, Inc. Ownership of the note then transferred to Washington Mutual Bank, as the corporate successor to Homeside Lending, and Chase acquired the note when it purchased certain assets and liabilities of Washington Mutual. Chase attached a copy of the note to the petition, and the parties have stipulated that Chase is in possession of the original note. The attachments to the petition also include acts of assignment reflecting the transfers of the note from Premier Mortgage to Premier Bank, and from Banc One to Homeside Lending, along with a letter agreement executed in June of 2001 between Homeside Lending and the Boohak-ers whereby the parties agreed to certain modifications of the note, including a new maturity date of June 1, 2006.
IsAfter answering the petition, the Boo-hakers propounded written discovery to Chase on July 9, 2012, requesting, in part, “any and all documents supporting” the contention that the note was owned by Chase. When Chase failed to respond to the interrogatories and requests for production, the Boohakers’ counsel contacted Chase’s counsel several times requesting a response or at least an update on the status of the document production. In an email dated August 8, 2012, Chase’s counsel advised that he had not received what he believed to be a full set of documents and explained that “[pjart of the issue is the age of the loan and part of the issue is that I seem to get the same thing [when] I ask for something over and over again.” According to counsel, he had “been assured the bank is getting it,” and he would follow up.
After several months without any further response, the Boohakers’ counsel scheduled a Rule 10.1 conference on February 21, 2012, at which time counsel for both parties agreed to a production date of March 8, 2013.[1] When that deadline passed without the production of any documents, the Boohakers filed a motion to compel, which the trial court granted, ordering Chase to produce the following documents by July 16, 2013:
1. All documents showing [Chase] is the holder of the promissory note and mortgage at issue in this proceeding;
2. A complete loan payment history and all supporting documentation;
3. Any other documents which are responsive to Defendants’ requests propounded on or about July 9, 2012, which have not been previously produced.
The judgment further provided that if Chase failed to timely produce the ordered documents, the court would consider additional sanctions authorized by the Louisiana Code of Civil Procedure.
|4The July 16, 2013 deadline passed without the production of any documentation *425 by Chase. Two days later Chase produced additional copies of the same documents that were attached to the petition. The Boohakers filed a motion for sanctions requesting that the court dismiss Chase’s petition with prejudice and award attorney’s fees to the defendants. In' an opposition memorandum filed on August 5, 2013, Chase submitted that, as of that date, it had supplemented its previous production and complied with the trial court’s order, although it admitted that the documents were produced after the deadline.
By judgment signed on September 16, 2013 (sanctions order), the trial court granted the motion for sanctions, in part, and ordered that Chase “is prohibited from using any documents ... or other evidence responsive to the discovery requests that was not produced to Defendants on or before August 13, 2013 to support its claims against Defendants in this proceeding.” The court also awarded the Boohakers $1,500.00 in attorney fees and $295.00 in costs. Chase sought review of the sanctions order in a writ application that was denied by this court. See JPMorgan Chase Bank, N.A. v. Boohaker, 13CW1884 (La.App. 1 Cir. 1/16/14) (noting that the correctness of any interlocutory judgment could be considered on appeal after an appealable judgment is rendered in the case).
In addition to their discovery efforts, the Boohakers filed a peremptory exception of no right of action, arguing that Chase had not established that it is a “person entitled to enforce” the note under Louisiana Revised Statute 10:3-301 because of certain “missing links” in Chase’s “chain of title” to the note. According to the defendants, the missing links include the following: (1) an absence of any assignment or other documents showing that Premier Bank granted Banc One the right to execute the assignment of the note to Homeside Lending; (2) an act of assignment executed by Homeside Lending that did not identify an assignee, but which the Boohakers claim “retroactively divested” Homeside | ¡¡Lending of any ownership in the note, because the assignment purported to be effective on May 1, 1998, the same effective date of Homeside Lending’s acquisition of the note from Banc One; and (3) an absence of any business records indicating that the note was listed on the books and records of Homeside Lending at the time that entity was transferred to Washington Mutual, or that the note was included in the assets Chase purchased from the FDIC as the receiver for Washington Mutual. In a related exception of prescription, the Boohakers argued, in pertinent part, that because Chase is not the proper party to enforce the note, the present suit did not interrupt the five year prescriptive period set forth in Louisiana Civil Code article 3498.
In opposition to the exceptions, Chase asserted that its possession of the original note is sufficient to establish its right to enforce the instrument and that the subject suit timely interrupted the five-year prescriptive period.
After a hearing on the matter, the trial court granted both exceptions and dismissed the ease by judgment signed on December 3, 2013. On appeal Chase asserts that the trial court erred in granting the exceptions and by entering the sanctions order to the extent the order prohibits Chase from using “other evidence” to support its claim.
DISCUSSION
In its first assignment of error, Chase contends that the trial court erred in granting the exception of no right of action. An action can only be brought by a person having a real and actual interest that he asserts. La.Code Civ. Pro. art. *426 681. The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Reese v. State, Department of Public Safety and Corrections, 03-1615 (La.2/20/04), 866 So.2d 244, 246. The exception assumes that the petition states a valid cause of action for some person and tests whether the | ^plaintiff has an interest in judicially enforcing the right asserted. Francis v. Francis, 11-2116 (La.App. 1 Cir. 6/13/12), 97 So.3d 1091, 1093, writ denied, 12-1635 (La.7/24/12), 93 So.3d 582. The question is simply whether the plaintiff has a right to sue the defendant. Niemann v. Crosby Development Company, L.L.C, 11-1337 (La.App. 1 Cir. 5/3/12), 92 So.3d 1039, 1046.
The party raising the exception of no right of action bears the burden of proof. OXY USA Inc. v. Quintana Production Company, 11-0047 (La.App. 1 Cir. 10/19/11), 79 So.3d 366, 376, writ denied, 12-0024 (La.3/2/12), 84 So.3d 536. Evidence supporting or controverting an exception of no right of action is admissible; however, in the absence of evidence to the contrary, the averments of fact in the pleadings will be taken as true. See Niemann, 92 So.3d at 1046; Horrell v. Horrell, 99-1093 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 368, writ denied, 01-2546 (La.12/7/01), 803 So.2d 971. Whether a plaintiff has a right of action is a question of law and is reviewed de novo on appeal. Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation, 10-2267 (La.10/25/11), 79 So.3d 246, 256.
In a suit on a promissory note, the payee who produces the note sued upon makes out a prima facie case of its claim to enforce the note. See Northshore Insurance Agency, Inc. v. Farris, 634 So.2d 867, 870 (La.App. 1 Cir.1993); see also La. R.S. 10:3—308(b); Premier Bank, National Association v. H.A.G. Partnership, 94-686 (La.App. 3 Cir. 12/7/94), 647 So.2d 636, 639. However, if the face of the instrument indicates title is in any person other than the possessor of the note, the burden is on the possessor to prove his ownership. Failure to prove a valid transfer results in a loss of the right to sue on the note. Hollis v. Norton, 586 So.2d 656, 657 (La.App. 5 Cir.1991); see also Preferred Investment Corporation v. Denson, 251 So.2d 455, 457 (La.App. 1 Cir.1971); Vidrine v. Carmouche, 422 So.2d 1327, 1329 (La.App. 3 Cir.1982); N.E. England Associates, Inc. v. Davis, 333 So.2d 696, 697-98 (La.App. 4 Cir.1976).
Consistent with this jurisprudence, Louisiana Revised Statute 10:3-301 provides, in pertinent part, that a “[pjerson entitled to enforce” an instrument includes “a non-holder in possession of the instrument who has the rights of a holder.” Although Section 3-301 does not specify how a non-holder in possession of the instrument can obtain the rights of a holder, the Uniform Commercial Code Comment for the provision explains that such rights can be acquired by “subrogation or under Section 3-203(a).” The comment further provides that a nonholder with the rights of a holder includes “any other person who under applicable law is a successor to the holder or otherwise acquires the holder’s rights.” La. R.S. 10:3-301, Uniform Commercial Code Comment.
Section 3-203, referenced in the Comment to Section 3-301, addresses the “transfer” of an instrument and provides that an “instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument,.” La. R.S. 10:3-203(a). Transfer of an instrument, whether or not the transfer is a negotiation, “vests in the transferee any right of the *427 transferor to enforce the instrument[.]” La. R.S. 10:3-203(b). As further explained by Uniform Commercial Code Comment 2 for Section 3-203:
Because the transferee is not a holder, there is no presumption under Section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder. At that point the transferee is entitled to the presumption under Section 3-308.
Chase maintains that it satisfies the requirements of Sections 3-301 and 3-203 because it acquired the original note through a series of transfers and ^acquisitions that began with the original payee, Premier Mortgage. It is undisputed that Chase is in possession of the original note, and the petition sets forth the series of transactions whereby Chase acquired the original note. For purposes of the exception of no right of action, those allegations are accepted as true unless the Boohakers, who have the burden of proof, introduced evidence that controverted the allegations. See OXY USA Inc., 79 So.3d at 376; Niemann, 92 So.3d at 1046; Horrell, 808 So.2d at 368. The record does not contain any evidence controverting those allegations.
In attempting to meet their burden of proof, the Boohakers primarily rely upon the absence of certain documentation, which the Boohakers contend are “missing links” in Chase’s chain of title for the note. According to the Boohakers, “[T]here is no evidence that Banc One Mortgage had the right to assign the note to Homeside,” because Chase “has not produced any assignments or other documents showing that Premier Bank, N.A. ... granted Banc One Mortgage Corporation the right to execute the assignment.” Similarly, the Boohakers point out that “there is no evidence indicating that the note was listed on the books and records of Homeside” when it was acquired by Washington Mutual.
These assertions fail to recognize that Chase is not required to prove the allegations of its petition at this time. The allegations are accepted as true for purposes of the exception of no right of action, unless the Boohakers present evidence controverting those allegations. See Niemann, 92 So.3d at 1046; Horrell, 808 So.2d at 368. The Boohakers, therefore, had the burden of presenting evidence establishing that, contrary to the allegations of the petition, Chase is not a transferee of the original note. Rather than presenting evidence contradicting those allegations, the Boohakers have merely pointed out an absence of documentation that would corroborate the allegations. The absence of supporting documentation does not disprove that the transfers occurred as alleged, |snor is such documentation an essential element of the alleged transfers. See Maddox v. Robbert, 165 La. 694, 699, 115 So. 905, 906 (1928) (recognizing that “a note payable to order may be transferred without indorsement, and ... the transfer can be proved by parol testimony”).[2]
*428 The only evidence cited by the Boohak-ers is a document captioned “NOTARIAL ENDORSEMENT AND ASSIGNMENT OF MORTGAGE NOTE” that was executed on behalf of Homeside Lending, as the assignor, on December 14, 1998, with a stated “effective date” of May 1, 1998, which is the same effective date of Home-side Lending’s acquisition of the note from Banc One. Because the effective date of Homeside Lending’s acquisition and purported assignment of the note are the same, the Boohakers contend that the assignment “retroactively divested” Home-side Lending of any ownership of the note and broke the chain of title.
The Boohakers’ contention disregards that the purported act of assignment in the record is incomplete, because it does not identify an assignee. Lines provided for the name of the assignee appear in multiple locations in the instrument, but the lines are all blank. The Boohakers did not offer any evidence of the intended assignee of the note, nor did they introduce any evidence indicating that the assignment was completed prior to Washington Mutual’s alleged acquisition- of the note as the corporate successor to Homeside Lending. To the contrary, the letter agreement executed on behalf of Homeside Lending and the Boohakers in June of 2001, which modified certain terms of the note, suggests that Homeside Lending’s ownership of the note continued several years after the execution of the incomplete act of assignment. Given the record before the court, |inwe find no merit to the argument that the incomplete act of assignment dated December 14, 1998, retroactively divested Homeside Lending of its ownership of the note.
In the absence of any controverting evidence, the allegations of the petition are accepted as true for purposes of this exception and establish that Chase acquired possession of the original note through a series of transfers that originated with the named payee. Based upon those allegations, Chase has a right of action to enforce the note, and the trial court erred in granting the exception of no right of action and dismissing the claim. See La. R.S. 10:3-301, La. R.S. 10:3-203; see also Preferred Investment Corporation, 251 So.2d at 457; Vidrine, 422 So.2d at 1329-1330.
In its second assignment of error, Chase contends that the trial court erred in granting the exception of prescription. Actions on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years, which commences to run from the day payment is exigible. See La. Civ.Code art. 3498. Similarly, Louisiana Revised Statute 10:3-118(a) provides, in pertinent part, that an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within five years after the due date or dates stated in the note or, if a due date is accelerated, within five years after the accelerated due date.
When a promissory note is payable in installments, as opposed to on demand, the five-year prescriptive period commences separately for each installment on its due date. See Harrison v. Smith, 01-0458 (La.App. 1 Cir. 3/28/02), 814 So.2d 42, 45; Home Finance Corporation v. Fisher, 361 So.2d 463, 464-465 (La.App. 1 Cir.1978); Anthon v. Knox, 155 So.2d 53, 54-55 (La.App. 1 Cir.1963). However, if the installments are accelerated based upon a default, prescription for the entire accelerated amount commences on the day of | n acceleration. See Harrison, 814 So.2d at 45; Home Finance Corporation, 361 So.2d at 465; Anthon, 155 So.2d at 54-55.
The promissory note in the present case, as modified by the letter agreement, required monthly payments through June 1, 2006, at which time the Boohakers were *429 obligated to pay any remaining principal and accrued interest in a single payment, sometimes referred to as a “balloon payment.” The note gave the payee the right to accelerate the indebtedness in the event of a default. Although Chase submits that there is no evidence that the acceleration clause was exercised, Chase alleged in its petition that it “has exercised its option to formally declare said indebtedness to be in default and accelerate all sums due thereunder.” However, with respect to the date of default, the necessary event to trigger an acceleration, the petition alleges that the note “is past due since June 1, 2006.” Consequently, the due date for the balloon payment and the alleged date of default prompting the acceleration are the same: June 1, 2006. This suit was filed within five years of that date on June 1, 2011.
In support of the exception of prescription, the Boohakers argue only that the claim is prescribed because Chase is not the proper party to assert a claim on the promissory note, and, therefore, its suit did not interrupt prescription. Having previously found no merit to the argument that Chase has no right of action, we likewise find no merit to the argument that its petition did not interrupt prescription. The suit filed on June 1, 2011, seeking to collect sums that became past due on June 1, 2006, is timely, and the trial court erred in granting the exception of prescription and dismissing the claim.
In its third assignment of error, Chase asserts that the trial court erred by entering the sanction order prohibiting Chase from using “other evidence” to support its claim. Louisiana law distinguishes between the sanctions available for the failure to comply with discovery requests and sanctions for disobedience of 112court-ordered discovery. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203; Walley v. Vargas, 12-0022 (La.App. 1 Cir. 9/21/12), 104 So.3d 93, 102. Generally, when a party fails to comply with party-initiated discovery, he may be required only to pay the reasonable expenses of obtaining an order compelling discovery. However, when a party fails to obey an order to provide or permit discovery, he is susceptible to the serious sanctions listed in Louisiana Code of Civil Procedure article 1471. Walley, 104 So.3d at 102. Refusal to comply with court-ordered discovery is a serious matter, and trial courts must have severe sanctions available to deter litigants from flouting discovery orders. Horton, 635 So.2d at 203.
The sanctions available under Article 1471 include, but are not limited to, an “order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.” La.Code Civ. Pro. art. 1471(A)(2). Criteria to be considered in imposing sanctions are the prejudice to the other party and the willfulness of the disobedient party. Horton, 635 So.2d at 204. The trial court has much discretion in imposing sanctions for failure to comply with discovery orders, and its ruling will not be reversed absent an abuse of discretion. Lirette v. Babin Farm, Inc., 02-1402 (La.App. 1 Cir. 4/2/03), 843 So.2d 1141, 1143.
The subject discovery requests were outstanding and unanswered for almost one year when the trial court issued an order from the bench on July 1, 2013, directing the plaintiff to produce the requested information within fifteen days.[3] During the one-year period preceding that *430 order, the Boohakers’ counsel repeatedly contacted Chase’s counsel, who advised that he seemed “to get the same thing ... over and over again” from his client. In the judgment granting the motion to compel, the trial court ordered Chase to produce certain documents by |1sJuly 16, 2013, including “[a]ny other documents which are responsive to Defendants’ requests ... which have not been previously produced.”
When Chase failed to comply with that order, the trial court entered the sanctions order prohibiting Chase “from using any documents ... or other evidence responsive to the discovery requests that was not produced to Defendants on or before August 13, 2013 to support its claim against Defendants in this proceeding.” Chase argues on appeal that the trial court abused its discretion in prohibiting the use of “other evidence” because that phrase could extend to testimony, affidavits, or other evidence that was not the subject of the original discovery requests. This argument has no merit.
Chase’s proposed construction of the sanctions order cannot be reconciled with the language of the order. The phrase “other evidence” is not unqualified in the sanctions order; rather, the prohibition extends only to “any documents ... or other evidence responsive to the discovery requests that was not produced to Defendants on or before August 13, 2013.” (Emphasis added.) The prohibition only applies to evidence, whether it be documents or other evidence, that was responsive to the discovery requests and was not produced on or before the given date. The order does not purport to prohibit any testimony or, for that matter, other tangible evidence that was not responsive to the discovery requests.
Chase does not dispute that it failed to timely comply with the court-ordered discovery, and the evidence indicates that the noncompliance was due to Chase’s repeated failure to produce the documents to its counsel. Under these circumstances, the trial court did not abuse its discretion by prohibiting the use of evidence responsive to the discovery requests that was not produced on or before August 13, 2013.
| ^CONCLUSION
The September 16, 2013 judgment imposing sanctions for Chase’s failure to timely comply with court-ordered discovery is affirmed. The December 3, 2013 judgment granting the peremptory exceptions of no right of action and prescription is reversed, and this matter is remanded. Costs of this appeal are assessed equally to both parties.
SEPTEMBER 16, 2013 JUDGMENT AFFIRMED; DECEMBER 3, 2013 JUDGMENT REVERSED; CASE REMANDED.

. See Louisiana District Court Rule 10.1.

. We again note that the subject suit is proceeding via ordinary process; therefore, the requirement in an executory proceeding of authentic evidence of an act of assignment is not applicable herein. See La.Code Civ. Pro. art. 2635; Bankers Trust Company of California N.A. v. Cooley, 03-1942 (La.App. 1 Cir. 6/25/04), 884 So.2d 594, 595 (recognizing that authentic evidence of an assignment is necessary to utilize executory process).

. The written judgment ordering the production was subsequently signed on July 29, 2103.