# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 19-348

THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK, AS
TRUSTEE (CWABS 2006-BC5)

VERSUS

MICHAEL E. OLDEMEYER
A/K/A MICHAEL OLDEMEYER
AND KRISTI A. OLDEMEYER
A/K/A KRISTI OLDEMEYER

**********

SUPERVISORY WRIT FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 90463-A
HONORABLE LALA SYLVESTER, DISTRICT JUDGE

**********

**JONATHAN W. PERRY**
**JUDGE**

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and Jonathan W. Perry, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

**Kent B. Payne**
**321 N. Vermont Street, Suite 207**
**Covington, Louisiana 70433**
**(985) 276-9731**
**COUNSEL FOR DEFENDANT/RELATOR:**
    **Kristi Fair formerly known as Kristi Oldemeyer**

Ronnie J. Berthelot
The Law Offices of Herschel C. Adcock, Jr., L.L.C.
13541 Tigerbend Road
Baton Rouge, Louisiana  70817
(225) 756-0370
COUNSEL FOR PLAINTIFF/RESPONDENT:
    The Bank of New York Melon formerly known as
    The Bank of New York, as Trustee


Jason O. Methvin
211 South Drive
Post Office Box 2331
Natchitoches, Louisiana  71457
(318) 352-7272
Curator ad hoc for Michael E. Oldemeyer

**PERRY, Judge.**

Relator/Defendant, Kristi Fair, formerly known as Kristi Oldemeyer ("Kristi"), seeks supervisory review of the trial court's judgment which denied her peremptory exception of prescription. For the following reasons, we grant the writ and make it peremptory.

## STATEMENT OF THE CASE

This litigation began on July 30, 2018, when Respondent/Plaintiff, the Bank of New York Mellon, formerly known as the Bank of New York (hereinafter referred to as "the Bank"), filed a "Petition for Mortgage Foreclosure by Executory Process with Appraisal" in connection to Kristi's execution of a promissory note on July 20, 2006. The question presented in this matter largely concerns whether certain filings within a Chapter 13 bankruptcy proceeding Kristi's ex-husband, Michael Oldemeyer, instituted, constitutes an "acknowledgment" of the debt sufficient to interrupt the five-year prescriptive period applicable to actions to enforce promissory notes.

## PROCEDURAL HISTORY

On July 20, 2006, Michael and Kristi Oldemeyer, while married, made and executed a promissory note in the amount of $100,000.00, payable in monthly installments beginning September 1, 2006, and continuing through August 1, 2036. Both Michael and Kristi signed the note as "Borrower," with Home Loan Center, Inc. d/b/a LendingTree Loans, the original note holder, being identified as "Lender." The promissory note contained an acceleration clause providing that in the event of default, the holder of the note may require the borrower to immediately pay the full amount of the principal owed. It further provided that "[i]f more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed."

The promissory note was secured by a mortgage on the couple's property, located at 2143 Johnson Chute Road in Natchitoches, Louisiana.

On January 14, 2010, the Oldemeyers[1] received a "Notice of Intent to Accelerate" from the new note holder, Bank of America Home Loans,[2] after failing to make their monthly payment on December 1, 2009.  Specifically, the notice provided:  "If the default is not cured on or before February 13, 2010, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated *at that time*."  (First alteration in original.)  No further payments were made by either Michael or Kristi, leaving an unpaid balance of $96,454.40 on the promissory note.

On December 29, 2011, Michael (now presumably divorced from Kristi) filed a voluntary petition with the Western District of Louisiana to institute a Chapter 13 bankruptcy proceeding.[3]  Therein, on Schedule F ("Creditors Holding Unsecured Nonpriority Claims"), Michael listed Bank of America Home Loans as a creditor for an "obliation [sic] for home located at 2143 Johnson Chute Rd., Natchitoches, LA (ownned [sic] by ex-wife)" in the amounts of $96,769.40 and $18,235.00.  However, on Schedule H ("Codebtors"), Michael checked a box stating that he "has no

---

[1] It is unclear when the couple divorced. While the notice was addressed to "Michael and Kristi Oldemeyer," the Bank, in its Opposition, begins referring to Kristi as "Fair" at the time of the notice.

[2] Bank of America Home Loans was the successor to the Bank of New York in the chain of title, as explained more fully in Footnote 7.

[3] An explanation of Chapter 13 bankruptcy filing was provided by the bankruptcy court in its notice to the creditors as follows, in pertinent part:

> Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts pursuant to a plan.  A plan is not effective unless confirmed by the bankruptcy court.  You may object to confirmation of the plan and appear at the confirmation hearing.  A copy or summary of the plan, if not enclosed, will be sent to you later.  The debtor will remain in possession of the debtor's property . . . unless the court orders otherwise.

codebtors." In any event, Michael listed "None" in Schedule A ("Real Property"), under which he was ordered to "list all real property[.]" In the accompanying "Bankruptcy Rule 3015(d) Summary and Notice of a Chapter 13 Plan of Repayment" ("plan"), Michael agreed to make monthly payments (via payroll deduction) of $874.00 for an estimated term of sixty months beginning January 28, 2012. However, the plan's cover page specified that the only amount to be repaid under the plan was attributable to "Non-Priority Unsecured Creditors," the sum of which was stated as "$46,182.80 (of which $11,333.00 will be paid to student loans)."[4] Notably, under Section I(C) of the plan, entitled, "**DEBTOR WILL PAY THESE CREDITORS DIRECTLY OR SATISFY CLAIM BY SURRENDER OF COLLATERAL**", neither the creditor of the subject property, Bank of America Home Loans (or any transferees of the note), nor the mortgage itself was listed by Michael in the corresponding sections.[5] In fact, Michael was first asked under Subsection I(C)(1) whether he, as the debtor, "**WILL PAY MORTGAGE(S) ON PRINCIPAL RESIDENCE/REAL PROPERTY,**" to which he responded "NONE" under the space provided to list any creditors, and left blank the spaces provided to detail the corresponding "Collateral," "Estimated Monthly Payment," and a beginning date for payment. Further, under Subsection I(C)(3), he was asked to indicate whether "**AS SOON AS POSSIBLE AFTER PLAN CONFIRMATION DATE, [HE] WILL SURRENDER PROPERTY TO SECURED CREDITOR TO SATISFY CREDITOR'S SECURED CLAIM,**" to

---

[4] After referring to "Non-Priority Unsecured Creditors," the cover page directs attention to "*Sections II(8) & III(C)(10)*", which, after listing the $11,333.00 owed in student loans in Section II(8), provides: "All other allowed general non-priority unsecured claims shall be paid a total of **$34,849.80** to be distributed *pro rata* based on their claim amount. The amount to be disbursed to the non-priority general unsecured creditors may be adjusted only as set forth in *III(C)(10)*."

[5] The only creditors mentioned in the plan were those listed in connection to various "lease/rental/executory contracts" found under section (4) of the plan.

3

which he, again, responded "NONE" as to any creditor, leaving blank the spaces provided to detail the "Collateral/Property to be Surrendered" and "Terms of Surrender." The only reference to the subject debt was featured on the plan's cover page, as follows: "**Special Provisions and/or Changes to Sections III, IV, or V of the Model Plan**: Upon confirmation of this plan, the in rem co-debtor stay shall be lifted with regard to the claim of **Bank of America**. No further motion to lift the stay shall be required."

A hearing to confirm the plan was then ordered by the bankruptcy court on March 6, 2012, and the Bank alleges to have appeared as a secured creditor and successor of Bank of America Home Loans, over no objection of Michael. On March 20, 2012, the plan was confirmed by an order of the court, which thereby modified the term for payment to forty-five months from the initial term of sixty months. The plan remained unchanged in all other aspects, and again included the special provision inscription noted above.

Pursuant to 11 U.S.C. § 362, Michael's bankruptcy filing created a bankruptcy estate and automatic stay which effectively prohibited any of Michael's creditors from pursuing him (in personam) and/or his property (in rem) during the proceedings.[6] Moreover, under 11 U.S.C. § 1301, this automatic stay extends to

_____

[6] 11 U.S.C. § 362(a) provides, in pertinent part:

[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of--

> (1) the commencement . . . of a judicial . . . proceeding against the debtor that . . . could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [or]
>     . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

4

protect any non-filing co-debtor that is liable on such debt with the filing debtor during the pendency of the proceedings, often referred to as a "co-debtor stay." Thus, it is undisputed between the parties that an automatic stay arose as of the date of the bankruptcy filing, or December 29, 2011.

On April 29, 2014, the Bank, as trustee,[7] moved to lift the stay as to both "the Debtor," Michael, and "the non-filing Co-Debtor," Kristi, citing irreparable damage from its inability to foreclose on the property. Interestingly, the Bank alleged therein that "[t]he Debtor's confirmed plan provides for the surrender of the property."

On May 20, 2014, the bankruptcy court ordered the termination of the automatic stay, thereby allowing the Bank to foreclose or otherwise exercise its security interest with respect to the property. The court also ordered (emphasis added): "The above property is hereby *abandoned as property of the above bankruptcy estate*[.]"

On April 5, 2016, the court issued an order granting Michael a discharge pursuant to 11 U.S.C. § 1328(a).[8] Having fully administered the bankruptcy proceedings, the court then ordered the discharge of the trustee in the matter on May 27, 2016.[9]

---

[7] Bank of America went on to transfer the Oldemeyers' claim to Green Tree Servicing, LLC, following the court's confirmation of the plan. Green Tree then named Bank of New York as trustee in the bankruptcy proceedings.

[8] 11 U.S.C. § 1328(a) provides, in pertinent part: "[A]s soon as practicable after the completion by the debtor of all payments under the plan, . . . after such debtor certifies that all amounts payable under such order . . . have been paid, . . . the court shall grant the debtor a discharge of all debts provided by the plan[.]"

Additionally, the discharge order provides the following explanation: "**Creditors cannot collect discharged debts**[.] This order means that no one may make any attempt to collect a discharged debt from the debtors personally."

[9] Sometime in 2017, the Bank motioned to reform the property description in the mortgage. On December 22, 2017, the trial court ordered the reformation of the description pursuant to the language featured in its judgment and held that the mortgage remained unchanged in all other respects. This motion was not submitted to this court in consideration of this Writ Application.

On July 30, 2018, the Bank filed a "Petition for Mortgage Foreclosure by Executory Process with Appraisal" before the trial court. The Bank asserted that the unpaid principal balance on the promissory note amounted to $96,454.40, and prayed that the court order the issuance of a writ of seizure and sale as to the mortgaged property to satisfy the debt. The trial court ordered the writ on August 9, 2018, thereby directing the Natchitoches Parish Sheriff to sell the subject property at public auction.

On September 18, 2018, Kristi filed a "Petition for Injunction to Arrest Seizure and Sale and for Expedited Hearing." She asserted entitlement to an injunction, without bond, "because the obligation underlying the mortgage sued upon herein has been extinguished by prescription, [and] the order directing the issuance of the writ of seizure and sale was rendered without sufficient authentic evidence having been submitted to the court[.]" As to the issue of prescription, Kristi argued that under La.R.S. 10:3-118(a), the debt evidenced by the promissory note was "extinguished and/or legally unenforceable" since more than five years had elapsed from the date any payments became due and exigible, which Kristi asserted to have occurred on the date that payments were accelerated, or February 13, 2010, until the Bank filed suit on July 30, 2018.[10] Next, Kristi argued the Bank was precluded from proceeding by executory process under La.Code Civ.P. art. 2635(A)(2). She alleged that the act of mortgage executed by the parties and submitted by the Bank in obtaining executory process did not meet the requirements of an authentic act because it was signed by only one witness. She also asserted that

_____

[10] Kristi also alleged in the alternative, and only in the event the trial court held that the note was not prescribed, that the acceleration notice was invalid since it was not sent to her address, thus rendering these proceedings premature and entitling her to an injunction without bond under La.Code Civ.P. art. 2753(A)(2).

6

because the judgment which purported to correct the erroneous property description was "not a valid, final judgment since it lacks the required decretal language[,]" that the property description in the act of mortgage failed to match the description in the order of seizure and sale.[11]

In response, the Bank filed a memorandum opposing Kristi's prescription defense.[12] At the outset, we note the Bank misrepresents Kristi's prescription argument in stating that "[Kristi] contends that the notice is proof that the debt was accelerated on *January 14, 2010, the date of the notice*." (emphasis added). Kristi, in fact, argued the debt was accelerated as of February 13, 2010, the date indicated for acceleration by the note holder. The Bank further argued, "[t]he meaning of that notice is to be determined by the Court[,]" and then proceeded to assert that under 11 U.S.C. § 108,[13] the automatic stay created by Michael's bankruptcy filing effectively acted to interrupt the "'tolling' of statutes of limitation during the time the stay was in effect".[14] Additionally, the Bank argued that "within the bankruptcy case, Michael Oldemeyer filed certain pleadings that are tantamount to an acknowledgment of the debt owed[.]" (footnote omitted). This acknowledgment, it argued, was sufficient to interrupt prescription "so that prescription did not begin to

---

[11] Kristi made an additional argument regarding the lack of authentic evidence by asserting that the promissory note at issue could not be deemed authentic "since it was not properly paraphed under La.Civ.Code art. 3325." However, this argument was not submitted in the Writ Application now before this court.

[12] In the time between the filing of Kristi's petition and the Bank's opposition, the Bank filed an answer and a motion for leave to convert executory process to ordinary process, which was granted by the trial court, thereby rendering the injunction issue moot.

[13] The Bank erroneously cites to title 12 of the U.S. Code throughout its pleadings filed in this matter, whereas the bankruptcy code is found under title 11.

[14] In the Bank's accompanying footnote to this statement, it cites both 11 U.S.C. § 308 and *Hazen First State Bank v. Speight*, 888 F.2d 574 (8th Cir. 1989). However, we note that neither the statute nor the caselaw cited features any such "tolling" language.

7

run again until theautomatic [sic] stay was lifted." (footnote omitted). The Bank alleged further:

> When Michael Oldemeyer listed Bank of New York as one of his creditors[15] and Bank of New York filed its motion to lift the automatic stay to enforce the terms and conditions of the promissory note and mortgage, that was an acknowledgment and prescription began to run again from April 29, 2014. Prescription was again interrupted on May 20, 2014 when the Bankruptcy Court signed the order lifting the stay.

In December 2018, Kristi filed the peremptory exception of prescription now at issue, along with an accompanying memorandum primarily reasserting the same arguments presented in her petition for injunction. She contended the Bank bore the burden of proving an interruption or suspension of prescription because the Bank's petition was prescribed on its face. Kristi asserted Michael's mere listing of the purported debt in his bankruptcy schedules was not an unequivocal acknowledgment sufficient to interrupt prescription, especially considering that no payments were either contemplated or made in fact, under the Chapter 13 plan. She asserted that Michael could not be considered her joint or solidary co-obligor following his discharge in bankruptcy, which she alleged was retroactive to the filing of the bankruptcy petition. Finally, Kristi argued 11 U.S.C. § 108 (cited by the Bank as authority in arguing that prescription was *interrupted* during the time the automatic stay was in effect) "merely tolls, or suspends prescription and does not interrupt prescription" during that time, with the suspension effectually expiring upon the termination of the stay ordered on May 20, 2014.

The Bank responded with a memorandum opposing the exception of prescription, reasserting many of the same arguments. It also argued that because

---

[15] There is no indication from the documents submitted to this court that "Bank of New York" was ever listed as a creditor in either the schedules or the plan, despite any alleged acknowledgment of transfers not objected to by Michael during the proceedings.

8

both Kristi and Michael signed the promissory note, both agreed to be bound for the same debt and, thus, both were considered solidary co-obligors such that an interruption of prescription, if any, as to one is effective as to the other. According to the Bank, because "[p]rescription was interrupted until May 20, 2014 when the Bankruptcy Court signed the order lifting the stay[,]" its filing of suit on July 30, 2018, was within the five-year prescriptive period for enforcing obligations evidenced by promissory notes.

In reply, Kristi asserted that "[a]t most, plaintiff has shown a suspension of prescription that is insufficient to extend the prescriptive period to the more than 8 year period [sic] from acceleration to the filing of this suit." Specifically, she argued that none of Michael's filings rose to the level of an acknowledgment. Kristi highlighted that while the Bank had the burden of proving prescription had not tolled, the exhibits it offered in opposition did not contain any bankruptcy schedules; rather, the only documents it filed, namely the plan, merely demonstrated that the creditor filed a proof of claim, which, without more, cannot be construed as an acknowledgment by the debtor.[16] Additionally, she asserted:

> As a matter of fact, Michael Oldemeyer's bankruptcy filings amount to a rejection, not an acknowledgment, of plaintiff's claims under the note. The Chapter 13 plan attached to plaintiff's opposition as P-1 provides that no payments are to be made on the subject note under the plan. Plaintiff has produced no evidence that Michael Oldemeyer promised to pay or otherwise acknowledged the debt sued upon here. In fact, plaintiff's pleadings establish that Oldemeyer made no payments on the note after acceleration, nor did anyone else.
>
> . . . .

---

[16] Kristi is correct the Bank did not submit the bankruptcy schedules when it opposed the exception of prescription. The Bank only submitted the Chapter 13 plan, which as noted above, made no mention of the Bank's successor, Bank of America Home Loans, nor the subject property, other than the inscription indicating that upon confirmation of the plan, the in rem co-debtor stay was to be lifted. The bankruptcy schedules, however, have been submitted to this court in the Writ Application. The Bank only submitted them in connection with a post-hearing memorandum ordered by the trial court after the initial hearing on the exception of prescription.

Michael Oldemeyer's Chapter 13 plan provides for no payments whatsoever on the note sued upon herein. His plan, in effect, is a repudiation of the debt. By listing plaintiff's claim on his schedules (if he indeed did so), then providing for no payments on it, [Michael] Oldemeyer effectively denied the claim. Therefore, his bankruptcy filings cannot be construed as an acknowledgment of debt.

Citing both Louisiana jurisprudence[17] and federal law under 11 U.S.C. § 558,[18] Kristi concluded that a mere admission of the existence of a claim without any clear, specific, and positive statement admitting liability and/or promising to pay the debt, does not prove an acknowledgment sufficient to interrupt prescription. Even if Michael's actions were sufficient to acknowledge the debt, he could not have been liable for the whole of the debt *after* he filed for bankruptcy, given the substantial modification of his obligations post-filing, and thus, "he does not fit the definition of a solidary obligor under La.Civ.Code art. 1794." Moreover, Kristi contends the Bank erroneously interprets 11 U.S.C. § 108(c) in arguing the bankruptcy filing interrupted prescription, when that statute only explicitly provides for the suspension of such period. She emphasizes the following language of 11 U.S.C. § 108(c):

> [I]f applicable nonbankruptcy law . . . fixes a period for commencing . . . a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section . . . 1301 [stay of action against co-debtor] . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
>
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

---

[17] *See Lake Providence Equip. Co., Inc. v. Tallulah Prod. Credit Ass'n*, 257 La. 104, 241 So.2d 506 (1970); *Chinn v. Mitchell*, 98-1060 (La.App. 1 Cir. 5/14/99), 734 So.2d 1263; and *Richard Guthrie & Assocs. v. Stone*, 562 So.2d 1071 (La.App. 4 Cir. 1990), *writ denied*, 567 So.2d 107 (La.1990).

[18] Kristi erroneously cited to 11 U.S.C. § 588 in her pleadings. The correct statute, 11 U.S.C. § 558, provides, in pertinent part: "The estate shall have the benefit of any defense available to the debtor . . . including statutes of limitation, . . . . A waiver of any such defense by the debtor after the commencement of the case does not bind the estate."

(2) 30 days after notice of the termination or expiration of the stay under section 362[,] or 1301 of this title, as the case may be, with respect to such claim.

Kristi argued 11 U.S.C. § 108(c) explicitly calls for the suspension of any applicable time periods, rather than an interruption as the Bank contends. Moreover, because the prescriptive period had not expired at the time of the bankruptcy petition, the statute required the Bank to have filed suit to enforce the obligation no later than 1) five years from the acceleration date, or February 13, 2015, plus any time that the action was suspended during the stay, or 2) thirty days after notice of the termination of the automatic stay, or June 19, 2014.[19] Where the later of those dates is February 13, 2015, Kristi maintained that even after accounting for "any suspension" per the statute—the period of two years and four months in which the stay was in place— the suit was still untimely filed where more than one year and ten months elapsed between the date of acceleration on February 13, 2010, and the creation of the stay on December 29, 2011, combined with the four years and two months that elapsed between termination of the stay on May 20, 2014, until the Bank's filing of this lawsuit on July 30, 2018. Thus, according to this interpretation, a period of approximately six years accrued even *after* subtracting the time in which prescription was suspended.

In response, the Bank filed a sur-reply memorandum opposing the exception. In addition to re-asserting several of its same arguments, the Bank argued that (despite the language in the notice that payments would "become due and payable in full" upon default) since the note is "an installment note with the language that

---

[19] We note Kristi's harmless error in calculating the date in her brief, wherein she arrived at June 21, 2014 (likely by beginning to count the thirty-day period from May 22, 2014). In fact, thirty days from May 20, 2014, the correct date the stay was lifted, falls on June 19, 2014.

the holder '**may**' declare that all sums are due, but does not have to," five-years prescription ran individually on each payment as they became due.

A hearing on the exception of prescription was held on January 31, 2019, after which the trial court took the matter under advisement and ordered post-hearing memoranda. Subsequently, Michael, through his curator ad hoc, filed his own exception of prescription adopting Kristi's arguments that there was no acknowledgment in this matter and that prescription extinguished the Bank's cause of action.

On April 5, 2019, the trial court issued an Order which denied Kristi's exception of prescription and gave reasons for its decision. In its Order, the trial court decreed:

> 1. [Kristi] is a solidary obligor under the subject note and that [Michael] acknowledged the subject debt in his bankruptcy proceeding;
> 2. Prescription began to run anew on the day after the automatic stay was lifted on the subject debt by order of the bankruptcy court; and
> 3. The instant action was timely filed.

After concluding that Kristi and Michael were, in fact, solidary obligors, the trial court found that "the listing of the loan as written on the Schedule F constitutes an acknowledgment of the subject loan." In relying on two separate Louisiana cases from 1939,[20] the trial court reasoned that Michael's listing effectively interrupted prescription such that "the five-year prescriptive period began to run anew, in accordance with La.Civ.Code arts. 3464, 3466, and 3498, on the date of filing of the bankruptcy petition, or December 29, 2011." Because of the automatic stay that arose from the bankruptcy filing, which the court alleges "lasts for the duration of

---

[20] *See Meridian Fertilizer Factory v. Collier*, 193 La. 815, 192 So. 358 (1939); and *Chalkley v. Pellerin*, 186 So. 382 (La.App. 1 Cir. 1939).

the bankruptcy proceeding absent modification by the bankruptcy court[,]" the trial court concluded that it was "Mr. Oldemeyer's discharge in bankruptcy . . . on April 5, 2016, [which] thus terminat[ed] the automatic stay[,]" without making any mention of the order that actually terminated the stay, which was rendered on May 20, 2014. The trial court then went on to find that, "[h]owever, on May 20, 2014, the bankruptcy court modified that automatic stay by lifting it only as to the Home Loan/Bank of New York[,]" when, in fact, the bankruptcy court approved such modification upon confirmation of the plan on *March 20, 2012*, not May 20, 2014 (the date on which the stay was lifted, some two years later), and only with respect to the "in rem co-debtor stay . . . with regard to the claim of **Bank of America**" under 11 U.S.C. § 1301. Thus, based upon the incorrect dates cited above, the trial court concluded that "the prescriptive period was free to run anew the following day, May 21, 2014. [The Bank] had five years from this date to commence the foreclosure, or April 21, 2019. [The Bank] filed its petition on July 30, 2018. Therefore, the instant action has been timely filed."[21]

Kristi now seeks supervisory review of the trial court's denial of her peremptory exception of prescription. She specifically asserts the trial court erred in (1) holding that the mere listing of the debt owed on the note as contained in Michael's bankruptcy petition constitutes an acknowledgment that interrupted prescription, and (2) holding that prescription on the note held by the Bank did not begin to run anew until May 21, 2014.

---

[21] In the footnote accompanying this statement, the trial court stated: "Five years beginning April 21, 2014, the day after the stay was lifted, would end on Saturday, April 20, 2019. The prescriptive period would extend to the next non-legal holiday, or Monday, April 22, 2019." Again, however, we note that the stay was lifted on May 20, 2014, not April 20, 2014. In referencing April 21, 2014, it appears the trial court likely conflated the date on which the motion to lift was filed by the Bank (April 29, 2014) with the date on which the lift was ordered (May 20, 2014).

**DISCUSSION**

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* [La.Code Civ.P.] arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. *But see* La.Code Civ.P. art. 2083, comment (b), Comments—2005, which provides, in pertinent part: "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." "A court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time, according to the discretion of the court." *Herlitz Constr. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So.2d 878, 878 (La.1981). "When the overruling of the exception is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits." *Id*.

Louisiana Code of Civil Procedure Article 927(B) states an objection of prescription shall be specially pleaded and may not be supplied by the court. "Ordinarily, the exceptor bears the burden of proof at the trial of the exception. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed." *Campo v. Correa*, 01-2707, p. 7 (La. 6/21/02), 828 So.2d 502, 508 (citations omitted). Louisiana Code of Civil Procedure Article 931 provides "evidence may be introduced to support or controvert" an exception of prescription. In the absence of such evidence, the objection must be decided upon the facts alleged in the petition, with all allegations

14

accepted as true. *Cichirillo v. Avondale Indus., Inc.*, 04-2894, 04-2918 (La. 11/29/05), 917 So.2d 424. If evidence is introduced at the hearing on the exception, the trial court's factual findings are subject to the manifest error–clearly wrong standard of review. *Carter v. Haygood*, 04-646 (La. 1/19/05), 892 So.2d 1261. However, when the trial court is not called upon to exercise its fact-finding function and the matter involves the determination of purely legal issues, reviewing courts apply a *de novo* standard of review. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

In deciding Kristi's exception of prescription, the trial court, as demonstrated above, relied on clearly erroneous dates and events in concluding that prescription had been interrupted. Therefore, we find a de novo review is necessitated by these clearly wrong factual findings of the trial court. In addition, a question of law arises with respect to whether the listing of a debt owed on a promissory note as to real property constitutes an acknowledgment of the debt that sufficiently interrupts or suspends prescription, where, despite listing the creditor in his bankruptcy schedules, the filing co-debtor ultimately proposed to make no payments in the bankruptcy plan, which was later confirmed by the bankruptcy court and eventually resulted in a discharge without having made any further payments on the note. Thus, we find this question of law also necessitates a *de novo* review.

Actions on promissory notes are subject to a liberative prescription of five years, which commences to run on the day payment becomes due and exigible. La.Civ.Code art. 3498. "When a promissory note is payable in installments, as opposed to on demand, the five-year prescriptive period commences separately for each installment on its due date." *JP Morgan Chase Bank, N.A. v. Boohaker*, 14-594, p. 10 (La.App. 1 Cir. 11/20/14), 168 So.3d 421, 428. If the due date on the note is

15

accelerated, an action to enforce the obligation to pay a note must be commenced "within five years after the accelerated due date." La.R.S. 10:3-118(a). "However, if the installments are accelerated based upon a default, prescription for the entire accelerated amount commences on the day of acceleration." *JP Morgan*, 168 So.3d at 428. Here, the note as originally executed by the parties was payable in installments. The acceleration clause contained in the Notice of Intent to Accelerate provided that "[i]f the default is not cured on or before February 13, 2010, the mortgage payments **will be accelerated** with the *full amount* remaining accelerated and *becoming due and payable in full . . . at that time*." (first alteration in original) (emphasis added). Because no further payments were made by Kristi and Michael after the acceleration date, the $96,454.40 remaining on the note became due and exigible as of the date the full amount of the note was to be accelerated, or February 13, 2010. Thus, the holder of the note had five years from the date of acceleration, or February 13, 2015, to enforce the obligation under the note. Because the Bank did not file suit until July 30, 2018, more than eight years after the full amount became due and exigible, the action prescribed on its face, and therefore, the burden shifted to the Bank to prove that its action had not prescribed.

In arguing that its action had not prescribed, the Bank asserted that Michael's bankruptcy filing, in which he listed Bank of America Home Loans on Schedule F, along with the notation "obliation [sic] for home located at 2143 Johnson Chute Rd., Natchitoches, LA (ownned [sic] by ex-wife)" for the amount of $96,769.40, constituted an "acknowledgment" under La.Civ.Code art. 3464 such that prescription was effectively interrupted.[22]

---

[22] Based upon the Bank's argument as presented before this court, we find a distinction must be drawn between interruption and suspension of prescription. In its opposition, the Bank states:

16

Aside from the general mandate under La.Civ.Code art. 3462 that the filing of suit by the obligee against the obligor interrupts prescription, La.Civ.Code art. 3464 provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." To put it another way, an acknowledgment is "the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course." *Gary v. Camden Fire Ins. Co.,* 96-055, p. 4 (La. 7/2/96), 676 So.2d 553, 556 (quoting *Lima v. Schmidt*, 595 So.2d 624, 631 (La.1992)). Thus, acknowledgment acts to interrupt the prescriptive period before it has expired, with the prescriptive period beginning to run *anew* from the time of the acknowledgment. *See* La.Civ.Code art. 3464, comment (f).

Our jurisprudence has interpreted an acknowledgment as necessarily "involv[ing] an *admission of liability*, either through explicit recognition of a debt owed, or through actions of the debtor that constitute a tacit acknowledgment." *Gary*, 676 So.2d at 556. (Emphasis added). "A tacit acknowledgment arises from a debtor's acts of reparation or indemnity, unconditional offers or payments, or actions which lead the creditor to believe that the debtor will not contest liability." *Id.*

> Tacit acknowledgment results from any action which amounts to an admission of the creditor's or owner's right, for instance the *payment* of a bill as debtor; *payment* of a portion of the debt, interests or arrears

---

When [Michael] listed plaintiff's debt on his bankruptcy schedules, he acknowledged the debt, which then *interrupted* the running of prescription. Interruption causes the prior running to stop and it then becomes as though prescription have [sic] never run at all. Prescription begins to run again unless some legally recognized event suspends it. [Michael]'s bankruptcy filing *suspended* any running of prescription during the entire time of the bankruptcy and, because [Michael] continually acknowledged the debt owed to [sic] the plaintiff up until his order of discharge, April 5, 2016, the 5 year [sic] prescriptive period did not begin to run *again* until April 6, 2016.

(emphasis added) (footnotes omitted). The effect of an interruption causes prescription to commence running *anew* from the last day of interruption. La.Civ.Code art. 3466. On the other hand, a period of suspension is not counted toward the accrual of prescription and commences to run *again* upon the termination of the period. La.Civ.Code art. 3472. While the Bank appears to conflate these terms throughout the proceedings, we note that only an interruption of prescription, rather than a suspension, can save the Bank's cause of action from extinguishment via prescription.

17

by the debtor or his agent; a request for a postponement of a *payment*; and, a fortiori, the *payment* of the amount due by the agent of the debtor.

*Flowers v. U.S. Fidelity & Guaranty Co.*, 381 So.2d 378, 382 (La.1979) (emphasis added) (quoting 2 Civil Law Translations, Aubry & Rau, Property, § 215, No. 304, p. 344 (1966)). In addition, both parties recognize the seminal case of *Lake Providence*, 241 So.2d 506, as providing guidance in determining whether an acknowledgment has taken place in the context of mortgages: "Acknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways. It may be implicit or it may be inferred from the facts and circumstances." Importantly, *Lake Providence* establishes the following "test" to establish an acknowledgment: "The note is the object, and the acknowledgment or promise *must be as to that object*. The note must be acknowledged as existing, and the *promise must be to pay such existing note*." *Id*. (Emphasis added.) Finally, "the facts and circumstances of each case are to be carefully considered to ascertain whether an acknowledgment has occurred. Hence the law will not support inferences which are inconsistent with the express [language] of the agreement in question." *Id*. at 510.

In denying Kristi's exception of prescription, the trial court cited two Louisiana cases from 1939, without distinction. However, we find those cases distinguishable from the facts of this case, especially in light of the fact that those cases featured former Article 3520 of the Louisiana Civil Code of 1870 (now La.Civ.Code art. 3464, by Acts 1982, No. 187, § 1, eff. Jan. 1, 1983) and predated our supreme court's modern interpretation of acknowledgment in *Lake Providence*.

Citing the first circuit's decision in *Chalkley*, 186 So. 382, 384, the trial court explicitly relied on the following language: "we can hardly conceive of a more

certain, definite and conclusive intention on the part of a debtor to acknowledge the right of a creditor than to place on a sworn schedule of his liabilities the name of the creditor and the amount and nature of the debt due him." In *Chalkley*, the plaintiff-creditor alleged that he paid taxes on property mortgaged by the defendant-debtor for the years 1932 to 1936 and prayed that the mortgage be recognized, and the property sold to pay his claim by preference. In response, the defendant-debtor pleaded that the note was prescribed on its face. The trial court found "[t]he note, on its face, prescribed on February 1, 1937, and the suit was not filed until eighteen days later. Plaintiff alleged in his petition that the defendant had *acknowledged many times* during the past five years the indebtedness ***and*** *had promised to pay same*." *Id*. (Emphasis added.) During the proceedings, it was "admitted that the debt due plaintiff was listed on the schedule filed by the bankrupt with his petition in bankruptcy, and due notice was given to the creditors." *Id*. at 383. The court then found, "[w]hatever may have been the effect of the bankruptcy proceeding itself on the running of prescription on this particular claim,[23] it remains a fact that the acknowledgment of the debt made by the defendant himself in his sworn schedule unquestionably had the effect of interrupting prescription as of the date of filing the schedule in 1935." *Id*.

Unlike the defendant in *Chalkley*, while Michael listed information about the subject debt in his bankruptcy schedules, he never made any such promise to pay, nor did he actually make any payments. Despite the fact that *Chalkley* predates *Lake*

_____

[23] We note that in *Chalkley*, the first circuit grappled with an argument presented by the defendant-debtor's counsel that there was no interruption of prescription in this case after analogizing to the situation of that of a receivership or insolvent succession. While the court could not decide "[w]hatever may have been the effect of the bankruptcy proceeding itself on the running of prescription[,]" it nevertheless stated it "can see considerable force in counsel's argument that, in this particular case, plaintiff's right to enforce his mortgage was not affected by the proceedings in bankruptcy." *Chalkley*, 186 So. at 383.

19

*Providence*, it appears to this court that a promise to pay has always been essential to a finding of acknowledgment.

In the next case relied on by the trial court, *Meridian*, 192 So. 358, 359-60, the supreme court found an acknowledgment in a case where "[t]he debt due to the [plaintiff-creditor] was listed on a schedule of the claims that were secured by liens, mortgages and [pledges], and was said to be secured by a mortgage on the land in Union Parish, Louisiana." In *Meridian*, a partnership, Collier Brothers, had previously executed a mortgage to secure the payment of three promissory notes. After the partnership filed for bankruptcy, the trustee filed an application to sell the property, and it was sold to Mrs. Delphia Collier, a Texas resident. The plaintiff-creditor then sought to foreclose on the mortgage and filed suit against Mrs. Collier to obtain an in rem judgment. The supreme court held that as a third possessor of mortgaged property, Mrs. Collier had the right to plead prescription of the notes. While it went on to hold that it "doubt[ed] that the declaration in the deed that the land was sold subject to the mortgage was a sufficient acknowledgment to interrupt the prescription of five years[,] the listing of this debt on the schedule of debts owed by Collier Brothers was a sufficient acknowledgment to interrupt the prescription." *Id*. at 360. The supreme court seemingly reached its conclusion by analogizing to cases dating back to the 1800s in which it was held that "a listing of the debts of a succession by an executor or an administrator is a sufficient acknowledgment to interrupt prescription." *Id*. Interestingly, the supreme court goes on to state: "Aside from the acknowledgment of the debt *by the trustee*, our opinion is that prescription was *suspended* by effect of the bankruptcy proceedings." *Id*. First, we find it unclear what was meant by an acknowledgment "by the trustee."

20

Second, we find *Meridian* gives this court guidance in finding that bankruptcy proceedings have the effect of *suspending* prescription, rather than an interruption.

In this case, the Bank asserts "[t]he acknowledgments consist of an ongoing recognition of [it] as a creditor in the bankruptcy case, the amount of debt owed by [Michael] to [it], the classification of the debt owed . . . and soliciting [it] to approve Oldemeyer's chapter 13 plan." Further, the Bank averred "[Michael] told the world when he filed for bankruptcy relief that he owed $96,769.40 to Bank of America and that his intention was to surrender the home to his creditor." However, our review of the supporting documents filed with this Writ Application demonstrates that Michael never listed Bank of New York as his creditor anywhere in either the bankruptcy petition or the Chapter 13 plan. Moreover, Michael never stated an intention to surrender his home; beyond the Bank's asserting so here and in its motion to lift the stay, Michael specifically responded "None" when asked to provide whether he would surrender any property in satisfaction of the debt owed. Finally, there is no indication of any "solicitation" of the Bank in approving the Chapter 13 plan, where it is the bankruptcy court's function to approve a debtor's plan. In fact, what the documents do show is that while Michael listed Bank of America Home Loans as an unsecured creditor for a home loan in the amount of $96,769.40 on Schedule F of the petition, he did not list the home under Schedule A, which was designated for the debtor to list any "Real Property". Neither did his Chapter 13 plan provide for any repayments to be made under the note; under the plan submitted to the court, he was only to repay $46,182.80, of which $11,333.00 would be paid toward his student loan, with the remainder owed to non-priority unsecured creditors, none of which included Bank of America Home Loans nor Bank of New York. This repayment plan was then confirmed by the court on March

21

20, 2012, with the only reference made to the note by the court being that "the codebtor stay shall be lifted with regard to the claim of **Bank of America**." No payments on the note were made since the date of acceleration on February 13, 2010, and no payments were either promised or proposed to be made under the plan with respect to the subject note. Michael was then discharged from bankruptcy on April 5, 2016, which, pursuant to the bankruptcy code, occurred upon "completion by the debtor of all payments *under the plan*." *See* 11 U.S.C. § 1328(a) (emphasis added).

Kristi argues this information, taken together, amounts to a repudiation and rejection of the debt, rather than an acknowledgment. Where the Chapter 13 plan provides for no payments whatsoever on the note sued upon, there is no indication that Michael ever stated an intention to surrender the property, and the plan was confirmed by the bankruptcy court, eventually resulting in Michael's discharge. Thus, we opine that these findings are not sufficient to support an inference of acknowledgment, especially where the bankruptcy filings fail to indicate any promise to pay any amount due under the existing note. Moreover, "[a]dmission of the existence of a claim is not an acknowledgment." *Chinn v. Mitchell*, 98-1060, p. 4 (La.App. 1 Cir. 5/14/99), 734 So.2d 1263, 1266 (finding that a letter acknowledging an attorney's lien does not, expressly or tacitly, admit liability or recognize an obligation). Therefore, beyond Michael's mere listing of Bank of America Home Loans as an unsecured creditor on Schedule F for an existing note, there was no promise to pay that obligation, and no payments were either made or ordered to be made under the confirmed Chapter 13 plan.

While finding that Michael's bankruptcy listing was not sufficient to constitute an acknowledgment, and thus, could not interrupt prescription, we nonetheless find that prescription was effectively *suspended* by the filing of the

22

bankruptcy petition. As stated above, an automatic stay arises by virtue of filing for Chapter 13 bankruptcy and extends to protect both the filing and non-filing co-debtors. *See* 11 U.S.C. §§ 362, 1301. While the trial court stated, without authority, that such stay "lasts for the duration of the bankruptcy proceeding absent modification by the bankruptcy court[,]" the statute *actually* provides that the duration of a "stay of an act against property[24] of the [bankruptcy] estate . . . continues until such property is no longer property of the estate." 11 U.S.C. § 362(c). Otherwise, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating . . . such stay[.]" 11 U.S.C. § 362(d). Thus, the automatic stay was in place from the time Michael filed for bankruptcy on December 29, 2011, and continued until the bankruptcy court terminated the stay by an order dated March 20, 2014, and simultaneously ordered the subject property "abandoned as property of the above bankruptcy estate." During the time that the stay was in place, the Bank argues that prescription was interrupted. However, as pointed out by Kristi, a clear reading of 11 U.S.C. § 108 only provides for the mere suspension of any applicable time periods, rather than an interruption. Thus, even accounting for "any suspension" pursuant to the statute, which would be the period of two years and four months in which the stay was in place, a period of six years nevertheless accrued from the date of acceleration until the suit was filed by the Bank. Therefore, even while the prescriptive period was suspended here, we find that that suspension was not enough to save the Bank's cause of action. Moreover, we note that according to the bankruptcy court's own inscription on the cover page of the plan, the co-debtor stay would be deemed lifted

---

[24] We note the statute makes a distinction here between actions against property, as opposed to, say, actions against the debtor.

23

as to Kristi regarding the note held by Bank of America Home Loans "[u]pon confirmation of this plan" and that "[n]o further motion to lift the stay shall be required." Where the plan was confirmed on March 20, 2012, the Bank could have proceeded against Kristi as a solidary obligor to recover any amounts owed under the note, even earlier than it could have done so against Michael upon termination of the stay ordered on May 20, 2014. The Bank, however, did not do so until July 30, 2018.

Considering the above, the trial court erred in denying Kristi's peremptory exception of prescription where such conclusion was drawn from clearly erroneous dates and events, and further, where there does not appear to have been any viable promise to pay the debt made on the part of the debtor such that a valid acknowledgment could be said to arise from these facts. Moreover, while bankruptcy proceedings have the effect of suspending prescription, rather than interrupting it, any suspension that took place was nevertheless insufficient to save the Bank's cause of action from extinguishment by five-years prescription.

For these reasons, we find merit to Kristi's claim that the trial court erred in overruling the peremptory exception of prescription. Therefore, we vacate the trial court's judgment overruling the exception of prescription and we render judgment in favor of Kristi, sustaining the exception of prescription and dismissing the claims of the Bank with prejudice. Costs of this Writ Application are assessed to Plaintiff/Respondent, the Bank of New York Mellon, formerly known as the Bank of New York.

**WRIT GRANTED AND MADE PEREMPTORY.**

24